FISHER et al. v. CUSHMAN et al.

In re FISHER et al.

(Circuit Court of Appeals, First Circuit.   June 15, 1900.)

Nos. 315, 317.

1. BANKRUPTCY—PROCEDURE FOR REVIEW.
   The fact that an appeal is taken in bankruptcy proceedings, and a petition for revision also filed, both relating to the same subject-matter, does not defeat the right to have the matter determined on the merits in whichever proceeding is held to be appropriate.

2. SAME.
   The proper proceedings to review an order of the court in bankruptcy requiring a bankrupt to indorse a license for sale is by petition to revise, and not by appeal.

3. SAME—ASSETS OF ESTATE—LIQUOR LICENSE.
   A liquor license issued by the authorities of a city under the police laws of the state, transferable subject to the approval of such authorities, which is ordinarily granted, and which for that purpose has a recognized value of from $4,000 to $5,000, conditioned upon the acceptance of the transferee by the authorities, on the bankruptcy of the license is available as assets of his estate, under Bankr. Act, and he may be required by the court to execute the transfer necessary to enable the trustee to convert it into money for the benefit of the estate.   While such a license is not in itself property, regarded merely as an evidence of authority to do business under a police regulation, under the circumstances stated it represents a substantial investment of the bankrupt's capital which would otherwise be subject to the claims of his creditors; and, so long as such capital is in such form that it can be converted into money at his option by merely executing an assignment, it constitutes property, within the meaning and intent of the statute, which he has no right to withhold from his creditors.

4. SAME—INTERVENTION IN PROCEEDINGS.
   Where a liquor license owned by a bankrupt and converted into money by his trustee by order of the court had previously been pledged by the bankrupt, the pledgee is entitled to intervene in the bankruptcy proceedings for the purpose of asserting his claim to the payment of his debt from the proceeds.

5. SAME—JURISDICTION OF COURT.
   Where there are several proceedings in bankruptcy against two persons who claim several interests in the same subject-matter, and the trustee of one bankrupt voluntarily submits himself to the jurisdiction of the court of bankruptcy in summary proceedings relating to the estate of the other for the purpose of disposing of the property claimed in common, the court has jurisdiction in such proceedings to dispose of his interest in such property.

6. SAME—MATTERS REVIEWABLE—COMPLIANCE WITH ORDER.
   Where a liquor license was issued to two persons, named therein, and one of the licensees in summary proceedings in the matter of the other's bankruptcy was required by the order of the court in bankruptcy to indorse the license for sale, and did so indorse it, he has no remedy against the order by application to the circuit court of appeals, because whatever action that court might take would be futile.   It seems that his remedy, if any, would have been by refusing to make the indorsement, and by taking proper measures for review in case he was proceeded against for contempt.

Appeal from, and Petition for Revision of Proceedings in, the District Court of the United States for the District of Massachusetts.

Edward F. McClennen (Brandeis, Dunbar & Nutter, on the brief), for appellants.

Addison C. Burnhan (Carver & Blodgett, on the brief), for appellees.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. One of these cases is an appeal from the district court for the Massachusetts district, sitting in bankruptcy, and the other is a petition to revise the proceedings of that court. 98 Fed. 89. Both relate to the same subject-matter. The appeal will not lie because the subject thereof is not within the three specifications of the matters of appeal found in section 25 of the bankrupt act, approved July 1, 1898 (chapter 541, 30 Stat. 553). Nevertheless, as was determined by us in Re Worcester Co., in our opinion passed down on April 20, 1900 (102 Fed. 808), the fact that an appeal was taken and a petition also filed does not defeat the right of the party moving this court to have the merits of the controversy adjudicated by us. They do not neutralize each other, and the only result is that the appeal must be dismissed, while the court must proceed to the adjudication of the merits in Ida C. Fisher et al., Petitioners, which petition, on the record before us, involves only a "matter of law," as required by section 24b of the bankrupt act.

The controversy in this case is whether, under the circumstances shown in the record, a license issued in accordance with the provisions of the Public Statutes of Massachusetts (chapter 100, § 5), and held by the bankrupt at the time the petition in bankruptcy was filed, can be availed of as assets for the benefit of the creditors in bankruptcy. That section is as follows:

"In a city which at its annual municipal election, or in a town which at its annual meeting, votes to authorize the granting of licenses for the sale of intoxicating liquors, as hereinafter provided, licenses of the first five classes mentioned in section ten, and in any city or town licenses of the sixth class mentioned in said section, may be granted annually by the mayor and aldermen of cities or the selectmen of towns to persons applying therefor. Every license shall be signed by the mayor or the chairman of the selectmen, and by the clerk of the city or town by which it is issued, and shall be recorded in the office of such clerk, who shall be paid by the licensee one dollar for recording the same. It shall name the person licensed, shall set forth the nature of the license and the building in which the business is to be carried on, and shall continue in force until the first day of the May next ensuing, unless sooner forfeited or rendered void."

Section 1 of the same chapter provides as follows:

"No person shall sell, or expose, or keep for sale, spirituous or intoxicating liquor, except as authorized in this chapter; but nothing herein contained shall apply to sales made by a person under a provision of law requiring him to sell personal property, or to sales of cider and native wines by the makers thereof, not to be drunk on their premises."

The power of issuing licenses was transferred to the police commissioners by section 1, c. 83, of the Acts of 1885, as follows:

"The police commissioners, instead of the mayor and city clerk of the city of Boston, shall exercise the powers and perform the duties given to and imposed upon said mayor and city clerk by section five of chapter one hundred of the Public Statutes relating to the signing of licenses for the sale of intoxi-

cating liquors; and said licenses, together with all licenses as hotel keepers or common victuallers shall be recorded in the office of the said commissioners instead of the office of said city clerk."

Obviously, the licenses thus authorized appertain to the police regulations of the state; and, except for the facts further appearing in the record, they would be in no manner subject to the control of a federal court sitting in bankruptcy, nor could they be availed of by such courts as assets.

The petition for the adjudication in bankruptcy of Ida C. Fisher was filed on October 19, 1898. The license in controversy issued on May 1, 1898. On its face, it purported to run to Ida C. Fisher and Rollin B. Fisher, as Fisher & Co. The record shows that Fisher & Co. was Ida C. Fisher solely, and that therefore Rollin B. Fisher, who is the husband of Ida, had only a nominal interest, and that his name appeared in the license, in accordance with a prevailing custom, to prevent a lapse thereof in the case of the death of Ida. For the purpose of considering the fundamental question in the case, we can assume that it is not complicated by the fact that the name of Rollin B. Fisher appeared in the license, and that Ida was the sole holder of it, both substantially and nominally. The record also shows as follows:

"Liquor licenses are issued by the city of Boston to a limited number only, and are much in demand. They are transferable only with the assent of the board of police commissioners and then only in the following manner: There is a usage and practice by which a license may be surrendered, and a new license issued to another in the place thereof, as follows: The man that desires to go into business files an application describing the locality, and who the persons are that propose to engage in business; and if they are satisfactory, and there is no legal objection to the place where they propose to engage in business, and there will be a vacancy caused in the list of licenses ordinarily granted, the board agrees to one license being surrendered for the purpose of being canceled, and in place of it another is issued to the new firm or persons applying for it. The surrender is ordinarily by a simple form of indorsement addressed to the board of police stating, 'The undersigned hereby surrenders his license for the purpose of having it canceled,' and signed by one or more of the licensees, binding the firm to that agreement.

"There is a recognized value of from $4,000 to $5,000 which attaches to a license for the purpose of such transfer, and such sum can be obtained in the liquor trade for the surrender of a license in favor of another, conditional upon the purchaser proving satisfactory to the board of police commissioners as a licensee."

It is also said in the record that evidence was submitted that the police commissioners have refused to consent to the transfer of any license until the one seeking to make the transfer has shown himself to be free of debt; but there is no finding to this effect, and the topic becomes unimportant, because, in fact, the license in controversy, with the consent of the commissioners, was surrendered by Ida C. Fisher and Rollin B. Fisher, by their indorsements thereon, made under the order of the district court, a new license substituted, and a valuable consideration received in connection with the transfer, in accordance with the practice shown by the citation which we have already made.

The trustee in bankruptcy of Ida C. Fisher seasonably claimed that the license should be realized for the benefit of the estate, and

petitioned the court for an order on her and Rollin B. Fisher to indorse the license, so that the proceeds thereof might be thus secured. An interlocutory order was entered, pursuant to which the license was indorsed as follows: "This license is hereby surrendered for cancellation. Ida C. Fisher. Rollin B. Fisher." The amount of $4,250 was realized, which was deposited in the registry of the district court, to await its final determination in reference to the claims thereto. Subsequently a final decree was entered that the amount so deposited in the court, less an equitable charge thereon of $1,000, should be paid to the trustee as assets. Ida C. Fisher and Rollin B. Fisher objected throughout to these proceedings, and their petition to revise them was seasonably filed in this court, and was answered by the trustee. An issue was thus duly raised on the matter of law whether or not the license or its proceeds were under the control of the district court for the purpose of the action which it took in reference thereto. The appropriate parts of the record in the district court were sent up on the appeal, and they are made parts of Ida C. Fisher et al., Petitioners, by references to them in the petition and answer, though it would have been more prudent to have incorporated them by an express agreement therefor filed in the case.

The only provision of the bankrupt act covering the fundamental question in this case is found in section 70 (30 Stat. 565, 566), wherein it is provided that among other things which shall vest in the trustee of an estate of a bankrupt is "property which prior to the petition he" (that is, the bankrupt) "could by any means have transferred or which might have been levied upon and sold under judicial process against him." No determination by any judicial tribunal of sufficient authority to conclude this court has been brought to our attention or found by us. It is, of course, well settled that governmental pensions and salaries of public officers are not affected by proceedings in bankruptcy; but neither of these can be presumed to represent any capital invested, and public policy forbids their transfer. Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264, and Sparhawk v. Yerkes, 142 U. S. 1, 12, 12 Sup. Ct. 104, 35 L. Ed. 915, which relate to seats in stock exchanges, in no way touch on matters of police regulation. Nevertheless they settle one question in this case, and that is that the fact that transferability depends on the consent of a stranger does not defeat the claim of creditors in bankruptcy to realize what can be obtained on a transfer if made. This, however, is a rule of law well settled and broadly applied.

In Ex parte Butler, 1 Atk. 210, the question came before Lord Chancellor Hardwicke whether or not the office of undermarshal of the city of London, which was a salable office, passed into the control of a commission in bankruptcy. It was held that it did, but the terms of the statute under which that case was decided include some expressions which render the decision inapplicable as an authority on the question at bar. Nevertheless the lord chancellor made an observation which leads up to a line of reasoning of importance with reference to this proceeding, as follows:

"This is a matter of very great consequence; for, when a man is likely to become bankrupt, he may sell all his stock in trade and effects, and invest

the produce in one of these salable offices, and in that manner cheat his creditors."

, Following out this suggestion of Lord Chancellor Hardwicke, it cannot be denied that the license in controversy represented pecuniary interests of the bankrupt of substantial value. Not only, as shown by the extracts which we have made from the record, does a recognized value of from $4,000 to $5,000 attach to a license of this nature for the purposes of transfer, but in this particular case the license in fact realized $4,250. Whether Ida C. Fisher, on her acquisition of the first license, of which the one in issue was the successor, paid for the transfer thereof from her assets an amount in excess of the governmental fee, which fee was, in the eyes of the law, a substantial sum, although the particular amount is not stated in the record, or whether that excess gradually accrued as an increment of the value of the successive licenses during the several years in which she was carrying on the business of Fisher & Co., the record does not show. Neither is it of consequence that it should, because the question underlying this case cannot be determined with reference to all the special circumstances of a particular license, but it must be disposed of in the light of the fact that every license, however obtained, has a recognized value, as already stated, in excess of the governmental fee, and of the further fact that the amount of that excess may represent actual cash of its holder paid for it on its transfer from some other licensee. Thus, it represents capital. To apply to these conditions the propositions of the petitioners would come to the same result, whether the amount involved was that at issue in this case, or much larger. In either case, if their propositions are sound, the creditors of a bankrupt may be left without the receipt of any percentage of their debts, and the bankrupt may remain in possession of what is practically under his own control, and of a pecuniary value sufficient to characterize him as a person of substance. To put their propositions in another form is to say that, although a bankrupt is otherwise unable to pay his creditors even a small percentage, yet he stands under no legal obligation to realize for their benefit a matter of large pecuniary value, but that, on the other hand, he may apply to his own uses what he can secure therefrom, although it has absorbed a large amount of assets which otherwise would have been within the reach of his creditors. Nothing but a clear purpose on the part of any bankrupt act to accomplish such a result, or an absolute defect in its provisions, would justify sustaining propositions which work such results.

It is impossible to give any categorical definition to the word "property," nor can we attach to it in certain relations the limitations which would be attached to it in others. This will be obvious on examining the article about property in the several editions of Bouvier's Law Dictionary. The same is equally obvious on an examination of the definitions given to the word in the standard dictionaries of the English language. All that can be said positively in reference to it is that, when found in a statute like the bankrupt act, it is not to be construed in any loose, popular sense, but with regard to the limitations which the law attaches to it. In this view, con-

sidering that the mere license represents a police regulation, so that, according to the determinations of the supreme court, even though given for a fixed period, it may be revoked without compensation by legislation touching the public interests, because it represents no vested right, it is not possible to regard it as property of itself. Boston Beer Co. v. Massachusetts, 97 U. S. 25, 25 L. Ed. 989; North Western Fertilizing Co. v. Hyde Park, 97 U. S. 659, 24 L. Ed. 1036; Douglas v. Kentucky, 168 U. S. 488, 18 Sup. Ct. 199, 42 L. Ed. 553; Chicago, B. & Q. R. Co. v. Nebraska, 170 U. S. 57, 74, 18 Sup. Ct. 513, 42 L. Ed. 948. On the other hand, under the circumstances shown in the record, it so far represents invested capital that it cannot be disputed that a licensee's administrator, who after his death obtains on its transfer a valuable consideration, is required by law to account in his official capacity for the sum received. Neither can it be denied that the same rule applies to a co-partner settling the affairs of a co-partnership after the death of one of the co-partners, or, in the present case, to Rollin B. Fisher, in case he had survived his wife and no bankruptcy proceedings had interposed. Further, as we have already said, there is not here involved the rule of public policy which applies to governmental pensions and the salaries of public officers; but the case in that respect is more akin to instances where hotels, livery stables, and other establishments subject to police regulation, and requiring licenses from the public authorities, are disposed of, with all the privileges and advantages appertaining thereto. Having in view, therefore, the evident fact which we have already stated,—that nothing but a clear purpose on the part of the statute to accomplish a different result, or an absolute defect in its provisions, would lead to a different conclusion,—we see no difficulty in holding that the pecuniary interest or capital which this license represents, and which may customarily be made available, is property which the bankrupt is bound to assist in realizing for his creditors, so long as he can render practical aid thereto by merely giving his signature, and without that substantial assistance which it is well settled creditors in bankruptcy are not entitled to receive, for accomplishing anything which requires skill or substantial labor on the part of the bankrupt after the petition is filed by him or against him. We therefore agree on this point with the conclusions of the district court.

It may be claimed that the reasoning on which this result is based cannot be carried out to its logical conclusion. We have reference especially to the matter of inventions and literary manuscripts, and contracts which require for their completion the skill of the bankrupt. It is generally said that none of these pass to the creditors. Williams, Bankr. (7th Ed.) 196; Cop. Copyr. (3d Ed.) 176; and Low. Bankr. 233. However, these facts make no difficulty with the result which we have reached, because, with reference to inventions and manuscripts, and contracts partly completed which involve the personal skill of the bankrupt, there is no doubt that all such things are property, as all the authorities make clear; and they are capable of being assigned as such, and of devolution by succession. Cop. Copyr. (3d Ed.) 177, and elsewhere. So, also, it is ordinarily said that an

action for breach of a contract to marry, or breach of a contract to cure, and other actions of tort which ao not concern injuries to property, do not pass to the bankrupt's creditors, and yet all these are property. The most that can be said about these exceptional rights is that they illustrate what we have already pointed out,—that it is impossible to give any categorical definition to the word "property," or to give such specific limitation to it as would always determine its relations to any particular statute. All these things are property, and absolutely at the disposal of the owner of them; and yet they lack one usual element of property, in that they are not within the reach of creditors. But our point is that these exceptional illustrations relate clearly to what is property, and therefore they cannot obstruct us in determining whether or not the matter in controversy is property, within the meaning of the bankrupt act.

The rule with reference to nonpatented inventions has never been laid down, except in the most general terms; and it may well be doubted whether, under peculiar circumstances, a court in bankruptcy might not compel an inventor to do what the district court in this case compelled the owner of this license to do. Assuming, as an extreme case, that an inventor has completed his invention, has put it in practical form, and has depleted his estate in experimenting in the course thereof, and that all that remains for him to do in order to procure his patent is the nominal act of giving his signature to the application therefor, we would have a case somewhat parallel to the case at bar; and we cannot concede that there are any authorities of so precise a character as would prevent a court in bankruptcy from realizing capital thus locked up.

We have proceeded in this matter without any special reference to the language which we have cited from the statute. This, in terms, covers "property which prior to the filing of the petition he" (the bankrupt) "could by any means have transferred or which might have been levied upon and sold under judicial process against him." It seems to us safer to put the case on broad ground, rather than on any peculiar phraseology of the statute, the precise scope of which is not plain. Very likely some of these words were used for the purpose of meeting difficulties arising under previous statutes in bankruptcy, by reason of the fact that sometimes a large amount of property was held under unrecorded deeds, which had given the debtor a credit to which he was not entitled, and which might have been attached under the local practice in various states, or might have been conveyed by the debtor to an innocent purchaser, but which, however, did not pass to assignees in bankruptcy. Nevertheless the language may well be held to be so broad as to sweep in cases of the precise character of that at bar. However, we pass this by, observing only that the alternative in this quotation shows a statutory declaration of what we have already found to be the fact,—that there may be property which cannot be sold under judicial process, and that there may be property of that character which passes for the benefit of creditors.

In behalf of the trustee in bankruptcy, reference is made to the paragraph of section 70 of the bankrupt act which provides that the

trustee shall be vested with certain "powers"; and it is claimed that this applies at bar, because the bankrupt had the power to realize from the license. However, we prefer not to attempt to rest the case on this expression, because we doubt whether so popular a signification can be given to the word, and whether, on a careful examination of the English statutes from which this was drawn, and of the decisions of the English courts in regard thereto, we might not be required to determine that it is to be construed technically, as known to the common law.

Questions as to the jurisdiction of the district court with reference to this license have been raised, in view of the fact that it issued to Rollin B. Fisher as well as to his wife; and a question is also made with regard to the intervention of one Chapin, who claimed an equitable interest in the fund derived from its transfer, and paid into the registry of that court. We do not understand that the objection as to Chapin is now insisted upon, but, even if it were, it would be fruitless, because the rule is settled beyond all doubt that any person claiming an equitable or legal interest in a fund in the registry of a court is entitled to intervene in that behalf.

So far as Ida C. Fisher is concerned, there can be no question of jurisdiction, inasmuch as the proceedings have taken place in the case in which she was adjudged bankrupt, and the court therefore clearly had the power to proceed summarily for the purpose of merely compelling her to give her signature on the transfer of the license. So far as Rollin B. Fisher is concerned, the objection as to want of jurisdiction is subdivided; that is to say, it is, on one hand, maintained that he was entitled to appropriate the license, or an interest in it, to his personal use, and that therefore the court could not, in the case of Ida C. Fisher in bankruptcy, proceed summarily against him with reference thereto. This objection is met, however, by the fact that Rollin B. Fisher is himself in bankruptcy, and his assignee submitted himself to the proceedings in the district court, which disposes of all substantial questions so far as Rollin B. Fisher is concerned. On the other hand, the more technical objection is made that the district court, in this proceeding relating to Ida C. Fisher, had no summary power to compel Rollin B. Fisher to perform any act,— especially that of indorsing the license in the manner which we have described. This, however, does not touch the merits of the case, and is purely a moot question, so far as we are concerned. Rollin B. Fisher has indorsed the license, and it has passed to a purchaser for value. Any decree that we might make could not rescind that, and would be futile. If, on the other hand, he had refused to make the indorsement, and the district court, in the case of Ida C. Fisher in bankruptcy, had proceeded against him for contempt by reason of that refusal, and had fined him or imprisoned him, and the fine had remained unpaid, or the imprisonment was not fully accomplished, a practical issue might have arisen in some way for our determination. Ex parte Baez, 177 U. S. 378, 20 Sup. Ct. 673, Adv. S. U. S. 673, 44 L. Ed. ——.

In No. 315 (Fisher v. Cushman) the appeal is dismissed, without costs, except that, in accordance with the agreement of the parties,

the expense of printing will be paid out of the fund in the registry of the district court, the net proceeds of the transfer of the license.

In No. 317 (Ida C. Fisher et al., Petitioners) there will be a decree affirming the proceedings of the district court, without costs, except that, in accordance with the agreement of the parties, the expense of printing will be paid out of the fund in the registry of the district court, the net proceeds of the transfer of the license.