HUTCHINSON v. LE ROY.

In re HUTCHINSON, Petitioner.

(Circuit Court of Appeals, First Circuit. January 8, 1902.)

Nos. 386, 390.

1. BANKRUPTCY—PROCEDURE ON REVIEW.
   The decision of a court of bankruptcy on a petition claiming ownership of funds in the hands of a bankrupt's trustee, where the facts are undisputed, may be reviewed by a petition for revision, under Bankr. Act 1898, § 24b, and not by appeal under that act.[1]

2. SAME—PROCEEDS OF PLEDGE—RECOVERY FROM TRUSTEE OF PLEDGEE.
   A pledgee of a certificate of stock repledged it to a bank, without the knowledge of his pledgor, to secure a debt of his own. He afterwards made a general assignment, and still later was adjudged a bankrupt. The bank sold the securities, and, after its claim was paid, had a sum remaining exceeding the proceeds of such certificate, which it paid over to the assignee, who had been previously notified by the original pledgor of his right to the certificate, subject to payment of his own debt, which he had duly tendered. The assignee had funds in his hands exceeding the proceeds of such certificate at all times until he turned the same over to the trustee in bankruptcy, who thereafter

---

[1] Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

also had at all times funds in excess of such amount. *Held*, that the original pledgor had the equitable right to follow the fund received by the bank in excess of its debt through the hands of the assignee and into those of the trustee, and to recover from the latter the proceeds of his stock, less the amount of his indebtedness to the bankrupt.

**3. SAME—LACHES.**

The original pledgor, having no knowledge that his stock had been repledged by the bankrupt until after he had filed his claim as a preferred creditor of the bankrupt estate, cannot be said to have waived any rights, or to have been guilty of laches which would preclude him from thereafter asserting the same against the fund in the hands of the trustee.

**4. SAME—COSTS.**

In re Dickson (C. C. A.) 111 Fed. 726, affirmed as to costs.

Appeal from, and Petition for Revision of Proceedings in, the District Court for the District of Massachusetts.

For opinion below, see 108 Fed. 212.

Addison C. Burnham and Albert S. Hutchinson (Freedom Hutchinson, on the brief), for appellant.

Roland Gray (Ropes, Gray & Gorham, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. These two proceedings were brought to revise the decree of the district court for the district of Massachusetts, sitting in bankruptcy, directing a payment to Le Roy by the trustee in bankruptcy of $6,490.29. As occurred in Re County of Worcester, 42 C. C. A. 637, 102 Fed. 808, and in Re Fisher, 43 C. C. A. 381, 103 Fed. 860, 51 L. R. A. 292, and in Re Dickson (C. C. A.) 111 Fed. 726, the moving party in this court, who is the trustee in bankruptcy, being uncertain as to the nature of his remedy, both appealed, which constitutes the case of Hutchinson v. Le Roy, and filed a revisory petition, which constitutes that of Hutchinson, petitioner. There can be no doubt that the latter proceeding is the correct one, and the appeal must be dismissed for want of jurisdiction.

The proceeding commenced by Le Roy filing a proof of debt, claiming this $6,490.29, but closing the proof with the following, "Deponent claims to be entitled as a preferred creditor." What Le Roy thus sought to accomplish could not be accomplished in that form, as the claim which he intended to maintain was not a preferred debt, under the bankruptcy act of 1898. Subsequently Le Roy obtained leave to amend as follows:

"And now comes the claimant, Stuyvesant Le Roy, and moves to amend his proof of claim heretofore filed by substituting therefor the following:

" 'The trustee appointed in the above-entitled bankruptcy proceeding received $6,490.29, belonging to this claimant, and forming no part of the estate of the bankrupts. Wherefore this claimant prays that the trustee may be ordered to pay to him said sum, less the amount of the dividend which has already been paid to him.

" 'This application is made without prejudice to the claimant's right to share as a general creditor for said amount of $6,490.29, in the event of the denial of this prayer for full payment.' "

The amendment having been allowed, what was originally intended as a proof of a preferred claim was converted into a summary petition for the payment to Le Roy of a specific amount from the funds in the possession of the trustee. The district court clearly had jurisdiction over this petition, and granted it. Le Roy claimed the proceeds of 65 shares of American Sugar Refining Company stock, sold as hereinafter stated; the amount realized on the sale being $8,320. According to well-established rules, a court winding up insolvent estates must take cognizance of all equitable set-offs, no matter how they may arise. Bankr. Act 1898, § 68; Carr v. Hamilton, 129 U. S. 252, 256, 9 Sup. Ct. 295, 32 L. Ed. 669; Scott v. Armstrong, 146 U. S. 499, 507, 13 Sup. Ct. 148, 36 L. Ed. 1059; Auten v. Bank, 174 U. S. 125, 148, 19 Sup. Ct. 638, 43 L. Ed. 920. It is sufficient that on the adjustment of all accounts between Le Roy and the bankrupts, including the matter of the 65 shares of American Sugar Refining Company stock, there was a balance due the former of $6,490.29.

Le Roy had pledged to the bankrupts before their failure the 65 shares of American Sugar Refining Company stock. Afterwards, at a date not given, the bankrupts borrowed of the Beacon Trust Company $100,000, pledging it a long list of securities, including with the rest the American Sugar Refining Company stock, and a small amount of other stocks belonging to other persons, without their consent, and without the consent or knowledge of Le Roy. Next, on December 27, 1899, the bankrupts made an assignment for the benefit of their creditors to one George C. Dickson. On the next day, or the day after, Le Roy called at the office of the bankrupts, and offered to pay the balance due from him on the delivery to him of the American Sugar Refining Company stock; but he was advised that nothing could be done, because the assets of the concern had been transferred to Mr. Dickson. Not knowing that his stock had been pledged to the Beacon Trust Company, Le Roy, forthwith after his interview with the bankrupts, informed Mr. Dickson that it belonged to him, and that it and its proceeds should be kept separate from the general assets of the insolvents. Between December 28, 1899, and January 2, 1900,—the details of the dates not being given, nor important,—the Beacon Trust Company sold all the securities pledged to it, with some exceptions not necessary to consider, but including Le Roy's, realizing on the sale $111,340.75. The dates show that, both at the time of the assignment and of the claim made by Le Roy on Dickson, his stock was still intact in its hands. The trust company paid from the proceeds of the sale the amount of its loan, and delivered to Mr. Dickson a cash surplus of $11,340.75 and the unsold securities. The stock belonging to Le Roy was, as already said, sold for $8,320, and the other stocks belonging to other persons were sold for $3,200. As the net amount of Le Roy's claim is the sum already named, $6,490.29, all the reclamations which could be made by all the owners of all the stocks so pledged were less than the amount thus turned over.

The petition on which the adjudication of bankruptcy was made was subsequently filed, at a date not given in the record, and Hutchinson was duly appointed trustee. Meanwhile Mr. Dickson made some disbursements and realized some other funds, but at all times he had in his hands as assignee at least $11,340.75 in cash, and he turned over to the trustee $30,783.62. The trustee always has had, as trustee, cash in excess of $11,340.75, not required for any special purpose connected with the estate of the bankrupts, or with the proceedings in reference to the bankruptcy. From the time Mr. Dickson received the money from the Beacon Trust Company until the amendment was made which converted Le Roy's proof into a summary petition, there always was in the hands of Mr. Dickson and the trustee a sum which could have been applied to satisfying Le Roy's claim, without affecting any interests, except the amount of dividends to be paid the general creditors, who could prove their claims either under the assignment or in bankruptcy.

The record not showing that Le Roy knew what disposition had been made by the bankrupts of his American Sugar Refining Company stock, or, indeed, that he knew that they had made any disposition of it, we are not to hold that it was in his power to take any further action to protect his rights. Therefore we are to hold that he has not been guilty of any laches which could prejudice him. We might hold that the claim which Le Roy made on Dickson placed sufficiently on Dickson the duty of ascertaining whether any of the stock in the hands of the Beacon Trust Company belonged to Le Roy. But Dickson, as assignee of the insolvents, was not a purchaser for value, and therefore it is of no consequence whether he was advised of this fact. It is also well settled that the trustee, as well as the assignee, took only the equities of the bankrupt. Stewart v. Platt, 101 U. S. 731, 738, 25 L. Ed. 816; Bank v. Yardley, 165 U. S. 634, 653, 17 Sup. Ct. 439, 41 L. Ed. 855. Therefore it follows that the trustee can set up no right against Le Roy which Dickson, as assignee, could not have done.

For the purpose of determining Le Roy's equities, it is not necessary to go back of the condition of things when the securities came into the hands of the Beacon Trust Company. Of course, the circumstantial facts concerning every transaction of this nature differ from those of every other, and it is not always for the trustee in bankruptcy to determine for himself whether such differences involve anything of substance. Nevertheless an examination of the record impresses us that this case must be determined in favor of Le Roy, on simple rules, and on recognized and well-established equitable principles.

There can be no doubt that, before the securities were sold by the Beacon Trust Company, Le Roy had a legal right to pay to it its loan, and take up all of them, for the purpose of protecting his interest in his own stock. It is said, however, that, in case the Beacon Trust Company had refused to accept payment or to surrender the stock, his only remedy would have been by an action at common law. Although this proposition, if sustained, could not affect the equities of this case, nevertheless it is not correct. If the

Beacon Trust Company had refused to surrender, Le Roy, being a stranger to the transaction between it and the bankrupts, could have maintained a bill of redemption. Story, Eq. Jur. (13th Ed.) § 1032. However, Le Roy had other equities, in all respects the same as those of a surety, including the rights of marshaling and subrogation, and also the right to avail himself of the law of application of payments in such manner as would be most to his advantage. These principles are so thoroughly settled that no citation of authorities is necessary in reference to them; but the two rights first named are well explained by Lord Hatherley in Ex parte Alston, 4 Ch. App. 168, and by Lord Justice Cotton in Ex parte Salting, 25 Ch. Div. 148, 152.

It is quite probable, also, that on a showing that the Beacon Trust Company could have repaid itself, certainly and immediately, on a sale of the securities belonging to the bankrupts, Le Roy could, on its refusal to sell, have brought a bill, in the nature of a bill for marshaling the assets, requiring it to sell them, and thus relieve his own stock. It is not necessary, however, to determine this, because he was clearly entitled to the specific equities which we have pointed out, and which are uniformly recognized and protected by the chancery courts. These equities adhered, of course, to the surplus, equally whether the sale was made by the Beacon Trust Company, or its loan was paid by Le Roy, or a sale was effected by a chancery court on a bill for that purpose.

As, according to equitable principles, these equities attached to the fund, it followed it, of course, wherever it could be found, until it should reach the hands of an innocent purchaser for value. The proposition of the trustee in bankruptcy that it cannot be determined out of what portion of the proceeds the loan of the Beacon Trust Company was paid, and that therefore it cannot be said that Le Roy had any lien on the specific surplus remaining after payment of the loan, is one nowhere recognized. It is also met by the well-known rule of appropriation of payments, to the effect that, where the parties themselves have made no specific direction, the law appropriates in such way as to protect the just rights of all. Moreover, the proposition is strictly met by Ex parte Alston, ubi supra, where it appears that the pledgees, situated like the Beacon Trust Company, applied to the payment of their debt the specific proceeds of property pledged without authority, as was Le Roy's stock in the case at bar; yet the court gave the owner of what was thus improperly pledged a lien on the remaining securities in the hands of the pledgees for the value of his property. An examination of the English cases doubted and overruled will show that Ex parte Alston has never been questioned. It was expressly recognized as authority by the court of appeal in Ex parte Salting, ubi supra.

Story, Eq. Jur. (13th Ed.) §§ 1255–1258, reaches, in these respects, every case where property has been wrongfully misapplied, without any limitation as to the relations between the owner and the person who misapplied it. In section 1258 it is said:

"Wherever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property,

if its identity can be traced, it will be held in its new form liable to the rights of the original owner or cestui que trust."

In a note to this section it is said that this rule applies a fortiori if the property has been rightfully sold by an agent or trustee; but the text is stated so broadly that it reaches proceeds wrongfully misapplied, no matter by whom, and without regard to whether or not the misapplication is by a person standing in a confidential relation. The same rule is thus stated, in a summary form, in May v. Le Claire, 11 Wall. 217, 235, 20 L. Ed. 50, 54:

"At law in many cases if property be tortiously taken or converted, the tort feasor may be used in trespass or trover, or the injured party may waive the tort and sue in assumpsit. In the latter case the same results follow as if there had been an implied contract." "In the same class of cases, where the converted property has assumed altered forms by successive investments, the owner may follow it as far as he can trace it, and sue at law for the substituted property, or he may hold the wrongdoer liable for appropriate damages." "There are kindred principles in equity jurisprudence, whence, indeed, these rules of the common law seem to have been derived."

The efficiency of the rules of the chancery courts, by virtue of which Le Roy seeks to impress the surplus in the hands of the Beacon Trust Company with equities in his behalf, is peculiarly illustrated by an extensive class of authorities, of which the opinion of Mr. Chief Justice Gray in Bank v. Barry, 125 Mass. 20, is a noteworthy one. There the money in question was taken by a clerk of the bank, yet not in his capacity as clerk. It was stolen. A part of it was delivered by him to one Barry, who was a stranger to the bank, and who with it purchased land, taking the title in the name of his mother; and Mr. Chief Justice Gray, delivering the opinion in behalf of the court, said that equity would charge the land with a trust in favor of the bank for the money received by Barry, it appearing that he knew that it was stolen. Thus, although the money was stolen in the form of currency or coin, and although it had gone through two hands, equity so earmarked it as to follow it into the real estate in question.

Notwithstanding the proposition of the trustee that, if Le Roy had undertaken to proceed against the Beacon Trust Company on a supposed refusal by it to recognize his rights, his remedy would have been only at law, yet, clearly, he would have had one in equity. This follows not only from the special rule we first stated, but also from the fact that his rights are equitable, as we have already shown, and are based on the principle stated in what we have quoted from May v. Le Claire, 11 Wall. 217, 235, 20 L. Ed. 50, 54. It has often occurred, in the history of the law, that a right is first recognized in equity, and a remedy therefor first given by the chancery courts, and that afterwards the common law recognizes the right, and gives a remedy according to its own rules. This, however, does not ordinarily oust the original equitable jurisdiction in chancery with reference thereto, especially where, as in the class of cases to which the topic we are discussing relates, the equitable principles are of a somewhat complicated nature, and not fully enforceable by the common law. Therefore, while quite likely, under the modern

rules of the common-law courts, Le Roy, in case of the refusal of the Beacon Trust Company to recognize his rights, might have brought an action for money had and received against the corporation, yet his relief in equity was not barred.

Neither is there involved here any of the questions raised in Hennequin v. Clews, 111 U. S. 676, 4 Sup. Ct. 576, 28 L. Ed. 565. The statement there made that a creditor who holds collateral is in no sense a trustee went beyond the case. Hennequin v. Clews related merely to the construction of certain provisions of the bankruptcy act then under consideration, with reference to what classes of debts were not covered by a discharge; and the decision, together with others of the supreme court in the same line, strictly limited those provisions to debts created by actual fraud, as distinguished from constructive fraud, and to those contracted in a fiduciary character, in a technical sense. They expressly held that commission merchants and factors failing to account for the proceeds of property committed to them for sale were relieved by the discharge, although it cannot be questioned that such merchants and factors occupy, in one sense, a fiduciary relation. Indeed, it was so expressly stated in Bank v. Gillespie, 137 U. S. 411, 419, 11 Sup. Ct. 118, 34 L. Ed. 724, where it was also held that Hennequin v. Clews and other decisions of that class are not in point on the question involved at bar. Bank v. Gillespie related to certain funds deposited with the bank by a factor under such circumstances that the bank must have known that they were the proceeds of the property of the factor's principal. The proceeding was in equity, in behalf of the principal, and the court granted him relief, and put the case, at pages 419 and 420, 137 U. S., pages 121, 122, 11 Sup. Ct., and pages 727, 728, 34 L. Ed., on the simple propositions that the bank, when it received the funds, knew that they belonged equitably to him, and that justice forbade its applying the moneys in payment of a debt due from the factor to itself, and demanded that the bank should account for the sums so received and appropriated. Indeed, excepting the fact that the funds had not gone beyond the hands of their first recipient, Bank v. Gillespie covers every substantial proposition involved in this appeal. That exception is met by what we have already cited from May v. Le Claire, ubi supra, and by the approval by the supreme court of a decision cited in Central Nat. Bank of Baltimore v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 69, 26 L. Ed. 693, each to the effect that equity will follow the fund through any number of transactions, and preserve it for the owner, so long as it can be identified. It is true that in the case last named the particular sum in question arose out of a fiduciary relation; but the rule as declared, whether by the supreme court, especially in May v. Le Claire, or by the great multitude of authorities which have had occasion to deal with it, is without any reference to any such limitation.

The trustee on this appeal undertakes to define the conditions on which he claims that the Le Roy petition must be allowed, if at all, and gives him but three opportunities: First, on the theory that he is a preferred creditor; second, the theory of a trust, and the following of trust property; and, third, the theory of marshaling.

So far as the first and third are concerned, we have said all that need be said.

The protection of trusts and the following of trust properties have given rise to a class of cases in which the rules which govern this appeal have been pushed farther than we have any occasion to push them here. The leading authority in this direction is In re Hallett's Estate, 13 Ch. Div. 696, which relates to the misapplication of funds which were strictly trust assets. The result of this line of cases is, perhaps, well stated by a citation by the supreme court in Central Nat. Bank of Baltimore v. Connecticut Mut. Life Ins. Co. (already referred to), at page 67, 104 U. S., page 699, 26 L. Ed., to the effect that, if a man mixes a trust fund with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his own. This reverses the rule of presumption which we have applied in the present case, where Le Roy has taken the burden, and has shown specifically that there was in the hands of the Beacon Trust Company, to which his equitable lien applied, a fund not needed to discharge its debt, and which, on the equitable rules of marshaling, and the common-law rules as to the application of payments, remained his specific assets. It is true that this summary statement cited by the supreme court was not intended by it, nor is it represented by us, as covering the entire range and effect of In re Hallett's Estate; but it is nevertheless true that, as the development of that decision, the chancery courts may have afforded more ample protection to funds strictly trust assets than is involved in the principles which solve the case at bar.

There is another class of cases, where an implied fraud is involved, which is equally as far-reaching, though in another direction, as In re Hallett's Estate. We refer to those of the class of Railway Co. v. Johnston, 133 U. S. 566, 576, 10 Sup. Ct. 390, 33 L. Ed. 683, where it is held that funds which had been received on deposit by a bank which had become hopelessly insolvent, so known to its officers, may be followed in equity.

The case at bar, however, is solved by the simple rule that where the property of any person has been, without his consent, and sometimes even with his consent, converted into money, the money may be followed in equity so far as it is possible to earmark it, provided the rights of innocent strangers who have given value are not prejudiced. This rule is so strongly fortified by the plainest principles of equity jurisprudence, and has been so constantly and uniformly applied for so many years, that the difficulty in drawing out the views herein stated comes less from the apprehension of it, and the certainty that it applies to the case at bar, than from the force and earnestness with which the various distinctions sought to be made by the trustee, and the line of reasoning by which he attempts to make them practically available, has been urged upon us.

No formal motion has been made to dismiss the appeal for lack of jurisdiction, and therefore no costs should be allowed thereon. In re Dickson (C. C. A.) 111 Fed. 726.

In No. 386, Hutchinson v. Le Roy, the appeal is dismissed, without costs to either party.

In No. 390, Hutchinson, Trustee, Petitioner, the decree of the district court is affirmed, with interest; the costs on the petition are awarded to the respondent, Le Roy; and the district court is directed to give effect to this decree, both as to debt and costs.