## DODGE v. NORLIN.

(Circuit Court of Appeals, Eighth Circuit. November 11, 1904.)

No. 2,091.

1. APPELLATE JURISDICTION—CONTROVERSIES ARISING IN BANKRUPTCY.

Section 24a of the bankruptcy law of July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3431], vests in the Circuit Courts of Appeals appellate jurisdiction over all controversies arising in bankruptcy proceedings over which those courts would have had jurisdiction if those controversies had arisen in the federal courts in other cases outside of proceedings in bankruptcy.

2. SAME—REVOCATION.

This appellate jurisdiction is not excluded or revoked by the provision of section 25a which grants jurisdiction over three specified classes of cases, and limits the time for invoking it to 10 days, nor by section 24b (30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]), which vests the power of supervision and revision in matter of law in the Court of Appeals. A litigant has the option, in a proper case, to review a decision by appeal or by a petition for revision as matter of law.

3. SAME—JUDGMENT AVOIDING CHATTEL MORTGAGE—RIGHT OF APPEAL.

A judgment of a court of bankruptcy that a chattel mortgage upon the alleged property of the bankrupt is voidable by his trustee, that it entitles the mortgagee to no lien upon the property and to no preference in payment out of its proceeds, is a final decision of a controversy arising in bankruptcy proceedings, of which the Circuit Court of Appeals would have had appellate jurisdiction if it had arisen in any other case in a federal court, and the decision may be reviewed by appeal.

4. BANKRUPTCY—APPEAL—PRACTICE—BILL OF EXCEPTIONS.

A bill of exceptions has no function and accomplishes no purpose in proceedings in bankruptcy.

A proceeding in bankruptcy is a proceeding in equity.

An appeal makes the entire record available to the appellant, and imposes the duty upon him' and upon the clerk of the lower court to place the material parts of it in the transcript sent to the appellate court. Teller v. U. S., 111 Fed. 119, 49 C. C. A. 263.

5. CHATTEL MORTGAGE—GOVERNED BY LAW OF STATE WHERE MADE.
The validity of a chattel mortgage is determined in the national courts by the decisions of the highest judicial tribunal of the state in which it was made.

6. SAME—VOIDABLE BY CREDITORS IN COLORADO WHERE MORTGAGEE CONSENTS TO SALES.
A chattel mortgage is voidable by creditors, according to the decisions of the courts of Colorado, if it covers merchandise and other property, and the mortgagee consents to the sale of the merchandise in the usual course of business, without requiring the application of the proceeds to the payment of the debt; and where such a mortgage is voidable as to part of the mortgaged property it is voidable as to all of it.

7. APPEAL—REVIEW—FINDING OF TRIAL COURT PRESUMPTIVELY CORRECT.
Where the court below has considered a question and made a finding on conflicting evidence, its conclusion is presumptively correct, and it should not be disturbed by an appellate court unless it appears that a serious mistake has been made in the consideration of the facts, or that an obvious error has intervened in the application of the law.

(Syllabus by the Court.)

Appeal from the District Court of the United States for the District of Colorado.

The Modern Machine Works Company, a corporation, was adjudged a bankrupt on December 21, 1903. It was a manufacturing corporation, and on April 24, 1903, it had given a chattel mortgage upon its machinery, materials, and merchandise to the appellant, David C. Dodge, to secure the payment to him of a debt of $4,000; which it had incurred for the purchase of a part of this property. Three thousand five hundred dollars of this debt remained unpaid when the adjudication in bankruptcy was made. The trustee took possession of the mortgaged property, and the mortgagee filed a claim wherein he set forth his mortgage, the specific property covered by it, and the amount of the debt secured by it. The referee adjudged that the chattel mortgage was void, and that it constituted no security for Dodge, because it described a stock of goods, wares, and merchandise, and permitted the mortgagor to remain in possession and to use and enjoy them until the maturity of the debt without applying the proceeds of the sales of them to its payment. Upon a petition for a review of this decision the District Court rendered a judgment of affirmance, and within 10 days after its rendition the mortgagor appealed from that judgment to this court.

Joel F. Vaile (Edward O. Wolcott, Charles W. Waterman, and W. W. Field, on the brief), for appellant.

Daniel B. Ellis (Henry T. Rogers, Lucius M. Cuthbert, Lewis B. Johnson, and Pierpont Fuller, on the brief), for appellee.

Before SANBORN and HOOK, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellant is met at the threshold of his case by a motion to dismiss his appeal upon the ground that the judgment which has determined that his mortgage lien upon the property and the proceeds of the property covered by it is void in the face of the

attack of the trustee of the bankrupt, is not subject to review by appeal.

The provisions of the Bankruptcy law which relate to the question presented by this motion are:

"The Circuit Courts of Appeals of the United States * * * are hereby invested with appellate jurisdiction of controversies arising in bankruptcy proceedings from the courts of bankruptcy from which they have appellate jurisdiction in other cases." Section 24a.

"The several Circuit Courts of Appeals shall have jurisdiction in equity, either interlocutory or final, to superintend and revise in matter of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction." Section 24b.

"That appeals, as in equity cases, may be taken in bankruptcy proceedings from the courts of bankruptcy to the Circuit Court of Appeals of the United States * * * in the following cases, to-wit: (1) from a judgment adjudging or refusing to adjudge the defendant a bankrupt; (2) from a judgment granting or denying a discharge; and (3) from a judgment allowing or rejecting a debt or claim of five hundred dollars or over. Such appeal shall be taken within ten days after the judgment appealed from has been rendered." Section 25a.

3 U. S. Comp. St. 1901, pp. 3431, 3432, 30 Stat. 553, c. 541.

Under the judiciary act of March 3, 1891, the Circuit Courts of Appeals had "jurisdiction to review by appeal or by writ of error final decision in the District Court and the existing Circuit Courts in all cases other than those provided for in the preceding section of this act, unless otherwise provided by law." 1 U. S. Comp. St. 1901, p. 549, section 6, c. 517, 26 Stat. 828.

The case here under consideration was not provided for in the preceding section of the act or in any other way than in section 6. The decision of the District Court that the lien by mortgage claimed by the appellant could not be enforced against the trustee who had seized the property which constituted the security for his debt was a final decision. It rendered the question of the mortgagee's right to his security res adjudicata. It finally determined a separate collateral controversy distinct from the general subject of litigation in the proceeding in bankruptcy. Withenbury v. U. S., 5 Wall. 819, 18 L. Ed. 613; Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559; Standley v. Roberts, 8 C. C. A. 305, 308, 59 Fed. 836, 839; Salmon v. Mills, 68 Fed. 180, 15 C. C. A. 356; Central Trust Co. v. Marietta, etc., Ry. Co., 48 Fed. 850, 1 C. C. A. 116; Grant v. Railroad Co., 50 Fed. 795, 1 C. C. A. 681. If this controversy had arisen in a federal court when it was not sitting in bankruptcy, the final decision of it would have been reviewable in this court by writ of error or appeal. Section 25a vests the Courts of Appeals with appellate jurisdiction of controversies arising in bankruptcy proceedings of which they have jurisdiction in other cases. As this court has appellate jurisdiction of this controversy in other cases in which it might be presented in a federal court, it has such jurisdiction when it arises in proceedings in bankruptcy.

The jurisdiction of the court of bankruptcy to render its judgment in this case was derived from section 2 (7) of the bankruptcy act of 1898, which empowers that court to "cause the estates of

bankrupts to be collected, reduced to money and distributed and determine controversies in relation thereto." It was these controversies, among others, over which section 24a vested appellate jurisdiction in the Circuit Courts of Appeals. Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 691, 48 L. Ed. 986; Steele v. Buel, 104 Fed. 968, 969, 44 C. C. A. 287, 288; Cunningham v. German Ins. Bank, 103 Fed. 933, 935, 43 C. C. A. 377, 380; In re Columbia Real Estate Co., 112 Fed. 643, 645, 50 C. C. A. 406, 408.

Counsel for the appellee have persuasively argued in opposition to this conclusion that this appeal ought not to be maintained (1) because the allowance of appeals by section 25a from the decisions of courts of bankruptcy within ten days after their rendition in the three classes of cases there specified excludes appellate jurisdiction in those courts in all other cases, and the case at bar does not belong to either of these three classes (In re Whitener, 105 Fed. 180, 186, 44 C. C. A. 434, 440; In re Columbia Real Estate Co., 112 Fed. 643, 50 C. C. A. 406; Fisher v. Cushman, 103 Fed. 860, 43 C. C. A. 381, 51 L. R. A. 292; Hutchinson v. Le Roy, 113 Fed. 202, 51 C. C. A. 159); and (2) because, as they contend, no appeal may be maintained from any decision which may be superintended and revised in matter of law under section 24b, and the judgment in this case is susceptible of such superintendence and revision (In re Worcester County, 102 Fed. 808, 813, 42 C. C. A. 637; Hutchinson v. Le Roy, 113 Fed. 202, 51 C. C. A. 159; In re Good, 99 Fed. 389, 39 C. C. A. 581). They have called attention to some of the cases which have been cited, and some of these cases tend to sustain the premises upon which this argument is based. Nevertheless these premises have never appeared to this court to be sound. The provision for appeals within 10 days from the renditions of the decisions in the three classes of cases treated in section 25a has never seemed to us to repeal, revoke, or exclude the plenary appellate power vested in the Courts of Appeals by section 24a to review the decisions of separable controversies in reference to the title, possession, or distribution of the estates of bankrupts which the courts of bankruptcy may render in the course of their proceedings. Steele v. Buel, 104 Fed. 968, 969, 44 C. C. A. 287, 288.

The purpose of Congress in the enactment of the judiciary act of 1891, and the effect accomplished by that law, were to provide an opportunity for a review either in the Supreme Court or in the Circuit Court of Appeals of the final decisions by the Circuit Courts and by the District Courts of all the controversies which they might determine. It was not, in our opinion, the purpose of Congress to strike down any portion of this grant or to impair in any way the appellate jurisdiction thus given by the enactment of the bankruptcy law. On the other hand, the provisions of the bankrupt act clearly show that it intended thereby to preserve this jurisdiction over the controversies to which it had already attached in other cases, and to supplement it with the grant of authority to review the decisions of controversies which had not theretofore been within that jurisdiction. Before the passage of the bankrupt act the Courts of Appeals had appellate jurisdiction of controver-

sies arising in the federal courts over the title to and liens upon the property of insolvents who might become bankrupts. Congress provided by section 24a that the Courts of Appeals should still have jurisdiction over those controversies when they arose in bankruptcy proceedings. By section 25a it granted to the Courts of Appeals additional jurisdiction which before the enactment of the bankrupt law they could not exercise, and provided a different time within which this jurisdiction might be invoked, to the end that the proceedings in bankruptcy might not be unduly delayed. But there is nothing in the provisions of section 25a which excludes, revokes, or diminishes the general appellate jurisdiction granted by the previous section over controversies within the jurisdiction of the Courts of Appeals before the bankruptcy law was passed. The extent of its effect is to grant some additional jurisdiction, and to restrict to 10 days the time within which the jurisdiction of the Court of Appeals may be invoked in the three classes of cases there specified.

Nor is there anything in the grant by section 24b of the power to revise and superintend in matter of law the proceedings of the inferior courts of bankruptcy which in any way affects or limits the general appellate jurisdiction vested by the sections of the law which have been considered. The act of 1898 does not grant the appellate and the revisory jurisdiction in the alternative. It does not give to disappointed litigants the right of appeal or the right of revision in matter of law. It grants the right of appeal and the right of superintendence and revision in matter of law only. It gives both rights freely and without limitation. The two grants are not inconsistent, and on familiar principles both must stand, and in a proper case either may be invoked.

Any other construction of the bankruptcy law would deprive litigants in the courts of bankruptcy of a review of the decisions of the most important controversies determined by those courts, of controversies between the trustee and third parties over the title to, and the liens upon the alleged property of the estate. A revision as a matter of law is not equivalent to nor is it adequate to take the place of an appeal. Many controversies of the nature of that here under consideration arise which involve large interests in which there is little doubt of the law, but in which the correctness of the finding of facts is both crucial and doubtful. The act plainly declares that the final decisions of such controversies may be reviewed by appeals, and no persuasive reasons convince that this declaration should not have its full effect.

The late decision of the Supreme Court in Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 691, 48 L. Ed. 986, as we understand it, is an adjudication of this question in accord with these views. In this case the Berlin Works had sold and delivered to the bankrupt certain machines under a contract that the title to them should remain in the corporation until the vendee had performed his agreement to pay the purchase price. The trustee had taken possession of the machines. Thereupon the vendor filed a petition for the possession of the property or for a preference in

the payment of the debt of the bankrupt secured by them out of their proceeds. The referee decided that the machines were the property of the bankrupt, and that the vendor must come in as an unsecured creditor. The district court reversed that decision and adjudged that the machines should be delivered to the vendor or that the trustee should pay to it their value. An appeal from this decision was taken to the Circuit Court of Appeals, and that court affirmed the judgment of the court below. The decision of the District Court in that case was reviewable in the Circuit Court of Appeals by a petition for superintendence and revision as matter of law under section 24b. In re Rochford, 124 Fed. 182, 187, 59 C. C. A. 388. That judgment did not fall within either of the three classes of cases specified in section 25a. Nevertheless the Supreme Court held that the claim of the Berlin Works to the machines or to the preference in the payment of its claim out of their proceeds raised a distinct and separable issue, which constituted one of those "controversies arising in bankruptcy proceedings" over which the Circuit Court of Appeals had appellate jurisdiction in other cases, and it sustained the appeal.

The claim of the appellant in the case at bar is of the same nature, and it was presented in substantially the same way. It was brought to the attention of the court of bankruptcy by a verified statement of the mortgagee which set forth his mortgage, the claim it secured, and the specific property upon which he claimed a lien under it. The issue it presented was whether or not the mortgage, which was valid between the parties, was voidable by the trustee. That issue was separate and distinct from the general subject-matter of the proceedings in bankruptcy, and it presented a controversy of which the Circuit Court of Appeals would have had jurisdiction if it had arisen in any other case in a federal court. The conclusion is that the Circuit Courts of Appeals have jurisdiction to review the final decisions by the courts of bankruptcy of controversies arising between the trustees in bankruptcy and third parties over the title to, or over liens upon the alleged property of the bankrupt or its proceeds under section 24a; that this jurisdiction is not excluded or revoked by the grant of appellate jurisdiction over the three classes of cases specified in section 25a; but the effect of that section is to limit the time within which appeals may be taken in the cases there treated, and to increase to some extent the appellate jurisdiction of the Courts of Appeals; that the general appellate jurisdiction vested by section 24a is not impaired or affected by the grant of the power of revision and supervision in matter of law contained in section 24b; and that the motion to dismiss this appeal must be denied.

When we turn to a consideration of the merits of the case we find ourselves embarrassed by the state of the record. The evidence and many of the proceedings before the referee and in the court below appear before us only by means of a bill of exceptions which the record contains. This is a proceeding in bankruptcy, and a proceeding in bankruptcy is a proceeding in equity. Bardes v. Hawarden Bank, 178 U. S. 524, 535, 20 Sup. Ct. 1000, 44 L. Ed.

1175; Siegel v. Swartz, 54 C. C. A. 399, 402, 117 Fed. 13, 16; In re Rochford, 59 C. C. A. 388, 393, 124 Fed. 182, 187. A bill of exceptions has no function and serves no purpose in a suit in equity or in bankruptcy. An appeal makes the entire record available to counsel for the appellant, and imposes upon him and upon the clerk of the lower court the duty of inserting in the transcript of the record sent to the appellate court everything material to the hearing of the questions to be presented there. Teller v. U. S., 111 Fed. 119, 49 C. C. A. 263. The bill of exceptions must therefore be disregarded.

It appears, however, that this bill of exceptions was presented by the appellant to the court below, that it bears the written approval of counsel for the appellee, and that it was filed in the case by the order of the District Court. In view of these facts, we have concluded, with some hesitation, that the paper called a "Bill of Exceptions" may be deemed a written stipulation of the parties to the effect that it correctly portrays the evidence and the proceedings below, and upon this basis we proceed to consider the case it presents.

The mortgage provided that until default the mortgagor might retain possession of the goods and chattels and use and enjoy them, but that in case of default, or if the mortgagor should attempt to sell or remove the mortgaged property without the written permission of the mortgagee, the latter might take possession of and sell the property to pay the debt. The chief business of the mortgagor was the manufacture of machines upon the orders of its customers, but it was also engaged in repairing machinery, in manufacturing water registers for sale, and in the purchase and sale of the materials used in its manufacturing business, and of dry batteries and electrical fixtures and supplies which were not used in its business of manufacturing. It did not hold itself out as a dealer in any of these materials, but it sold them in the usual course of business to any one who came and inquired for them. During the existence of the mortgage the Modern Machine Works Company sold about 3,000 or 4,000 pounds of steel, which was worth about $175, and various small amounts of materials and of electrical supplies. The mortgagee testified that he never gave his consent to the sale of any of this property with the exception of one machine; that he consented to that sale on condition that the proceeds should be applied to the payment of the mortgage debt; that he did not know that the mortgagee had sold any of the property covered by the mortgage until litigation began; that he visited the mortgagor's place of business two or three times after the mortgage was given; that he did not notice the business particularly; that he was there for the purpose of having his automobile repaired; and that he did not know that he knew that the mortgagor was buying and selling merchandise. The mortgage covered machinery used in the manufacturing business of the mortgagor, electrical fixtures and supplies and materials used in the manufacturing business.

It is assigned as error that in this state of the case the court below held the mortgage voidable at the option of the trustee upon

the ground that the mortgaged property might have been levied upon and sold under judicial process against the bankrupt. 30 Stat. 565, c. 541, § 70a (5); 3 U. S. Comp. St. 1901, p. 3451. The decisions of the highest judicial tribunal of the state in which a chattel mortgage is made determine its validity in the national courts. Etheridge v. Sperry, 139 U. S. 266, 271, 11 Sup. Ct. 565, 35 L. Ed. 171. The Supreme Court of Colorado has decided that a chattel mortgage of a stock of merchandise is voidable, at the option of creditors of the mortgagor, if there is an agreement between the mortgagor and the mortgagee, or a consent of the mortgagee, that the merchandise may be sold in the ordinary course of business, without applying the proceeds of the sales to the payment of the mortgage debt; that this agreement or consent may be evidenced by the fact that the mortgage, as in the case at bar, provides that the mortgagor may retain, use, and enjoy the stock of goods, but that if he sells them the mortgagee may take possession of them, and by the fact that while the mortgage is in existence the goods are in fact sold by the mortgagor in the ordinary course of business without applying the proceeds to the payment of the mortgage debt. That court has also repeatedly decided that, if any part of the mortgaged property consists of goods thus sold with the consent of the mortgagee, the entire mortgage is void in the face of an attack of creditors. Wilson v. Voight, 9 Colo. 614, 619, 13 Pac. 726; Estes v. First Nat. Bank, 15 Colo. App. 526, 537, 63 Pac. 788; Harbison v. Tufts, 1 Colo. App. 140, 143, 27 Pac. 1014; Brasher v. Christophe, 10 Colo. 284, 295, 296, 15 Pac. 403. Under these rules of law, the only question open for consideration in reference to the validity of this mortgage is whether or not the mortgagee consented to the sale by the mortgagor of the electrical fixtures and supplies, the rolled steel, and the other small amounts of merchandise which it sold in the ordinary course of business, without applying the proceeds to the payment of the mortgage debt. The referee and the district court found that such consent was given, that it was in the contemplation of both of the parties to the mortgage when it was made that the electrical supplies should be sold to customers in the usual course of trade, that the raw materials should be consumed in the manufacture of machines or sold to purchasing customers as opportunities presented themselves, and that there was no other way in which the mortgagor could use and enjoy these goods. If this question were presented here for the first time there might be room for the contention that the evidence does not conclusively show that the mortgagee contemplated or consented to this course of action. But in view of the testimony that the electrical supplies and fixtures were not necessary to, or useful in, the business of manufacturing, but were kept and sold as merchandise; that raw materials were so sold whenever a customer sought to buy them; that the mortgagee lived in the city where this property was situated, and occasionally visited the store from which these sales were made; and that he took no steps for many months nor until litigation was commenced to seize the property on account of the sales—this record does not

so. clearly show that the referee and the court were mistaken in their finding that an appellate court should reverse it. Where the court below has considered a question and made a finding on conflicting evidence, its conclusion is presumptively correct, and it should not be disturbed unless it is reasonably clear that a serious mistake has been made in the consideration of the facts or an obvious error has intervened in the application of the law. Stearns-Roger Mfg. Co. v. Brown, 52 C. C. A. 559, 563, 114 Fed. 939, 943.

The argument of counsel for the appellant that the rule of law adopted by the Supreme Court of Colorado is inapplicable to this case because the mortgagor was a manufacturer, and not a merchant, has not been overlooked in reaching this conclusion. This argument has not prevailed, because, while the chief business of the mortgagor was that of manufacturing machinery, there is testimony that it was also engaged in the business of buying and selling finished goods, and because the courts of Colorado hold that if a mortgage is voidable as to any part of the property which it describes it is voidable as to all of it. If a mortgage of a soda fountain and certain goods and merchandise is voidable because there was a consent to the sale of the goods and merchandise, as in Wilson v. Voight, it is not perceived why a mortgage of machinery and of electrical supplies is not made voidable by a consent to the sale of the electrical supplies from day to day in the ordinary course of business.

The judgment below must be affirmed, and it is so ordered.