In re WHITENER.

RODGERS v. RAMSEUR et al.

(Circuit Court of Appeals, Fifth Circuit. November 20, 1900.)

No. 921.

1. BANKRUPTCY—JURISDICTION OF COURTS OF BANKRUPTCY.
   Under Bankr. Act 1898, a court of bankruptcy has jurisdiction to restrain proceedings in a state court by an adverse claimant to recover possession of property which is in possession of a trustee as part of a bankrupt's estate, and to compel the return of the property where it has been taken from the possession of the trustee in such suit. It also has jurisdiction, under the provisions of section 2, to entertain a petition of intervention by the claimant in the bankruptcy proceedings, and to determine the issues presented thereby.

2. SAME—APPEALS—JUDGMENT ALLOWING "CLAIM."
   Under Bankr. Act 1898, no right of appeal exists from any judgment rendered or order made by a court of bankruptcy in the administration of an estate, except the particular judgments enumerated in section 25; and no appeal lies from a judgment entered on a petition of intervention filed by a claimant of property in the hands of a trustee declaring the ownership of the intervener, and ordering restitution of the property, such judgment not being one allowing a "claim," within the meaning of section 25a, subd. 3.

**8. SAME—PETITION FOR REVISION.**
An appeal taken to the circuit court of appeals from a judgment of a court of bankruptcy, which was not appealable, cannot be treated as a petition in equity for revision in matter of law, under Bankr. Act 1898, § 24b, where the questions presented for review all involve matters of fact.

Appeal from the District Court of the United States for the Eastern District of Texas.

The following general statement of the case is found in the transcript, apparently agreed to by all the counsel representing the various parties in interest:

On the 24th day of April, A. D. 1899, J. C. Whitener, bankrupt, filed his petition in bankruptcy. The schedule made by Whitener disclosed no assets. On the 28th day of April, A. D. 1899, he was duly adjudicated a bankrupt. On the 15th day of May, A. D. 1899, the first meeting of the creditors was held at Texarkana, Tex., in pursuance of notice issued and mailed by the referee to all the creditors of said bankrupt, and published in the Gate City News, the paper designated for publication of notices in bankruptcy, at which meeting creditors of the said bankrupt proved up and filed their claims, examined the bankrupt, and appointed Rollin W. Rodgers, of Texarkana, Tex., as trustee in bankruptcy of said estate, and the said Rodgers was duly qualified as said trustee. On the 26th day of May, A. D. 1899, the creditors of said bankrupt filed their contest of Schedule B filed by said bankrupt, and a motion for a subpœna for witnesses and documents, and to. commit for contempt. On the 6th day of June, A. D. 1899, this cause came on for hearing, in pursuance of notice, said hearing being on petition of contesting creditors contesting the schedule filed by the bankrupt herein. A motion to commit for contempt, and the application of said creditors for an order of court commanding the said J. C. Whitener, the bankrupt, to deliver over to the said Rollin W. Rodgers, trustee, all of certain real and personal property alleged in creditors' petition to be in the possession of the said J. C. Whitener, and the property of the said J. C. Whitener, at and before the time he filed his petition in bankruptcy. In his answer to the creditors' petition, the said J. C. Whitener alleged that the property in controversy was owned by one P. S. Ramseur, and that he (the said Whitener) was holding the same as agent of the said Ramseur. The property in controversy is described as follows, to wit: Lots No. 4, 5, and 6, in block No. 12; lot No. 2, in block No. 25; also one-seventh of lot No. 7, in block No. 12, being 25 feet off of the east end of the said lot next to the alley,—all situated in the city of Texarkana, Bowie county, Tex., together with all the appurtenances and improvements thereon; also all the livery stock belonging to the stable now conducted by the said R. W. Rodgers as trustee herein, including all horses and other animals, carriages, buggies, and other vehicles, and all harness, moneys, and personal properties of every kind pertaining to the said livery-stable business, including all books and book accounts connected therewith; also the undertaker's establishment now in the possession of said Rodgers, as trustee herein, situated in Texarkana, Tex., including all coffins, hearses, teams, and property of every description, including money, books, and book accounts appertaining thereto,—all of which said property at the time of said hearing was in possession of the said Whitener. After hearing the testimony of witnesses, it was ordered that a further hearing be postponed to make additional parties. On the 24th day of June, A. D. 1899, the said contesting creditors filed their motion to make P. S. Ramseur, of Lamar county, and the People's Building, Loan & Savings Association of Syracuse, N. Y., parties to this suit, and the 6th day of July, 1899, was set for the day for hearing said contest, said hearing to be had at Texarkana, Tex. On the 6th day of July, A. D. 1899, the cause came on further to be heard, and it appearing to the court that the said P. S. Ramseur and the said People's Building, Loan & Savings Association had not been served with process making them parties to this suit, and upon hearing further testimony and argument of counsel, it was ordered by the court that the said J. C. Whitener, bankrupt, should immediately deliver all of the said property to the said Rollin W. Rodgers, trustee. In compliance with said order of the referee, the said J. C. Whitener delivered to the said Rodgers all

of the property above described. And it was further ordered that a further hearing of this cause be postponed to complete service on the said P. S. Ramseur and the said People's Building, Loan & Savings Association. On the 15th day of August, A. D. 1899, the said association filed their answer in said cause, and their motion to have R. L. Dalby, liquidating agent of the Interstate National Bank of Texarkana, made a party to this suit. On the 5th day of September, A. D. 1899, P. S. Ramseur filed his answer in this cause, setting up claim of title and right of possession to all of the said described property, and praying for an order of court that the said Rollin W. Rodgers, trustee, deliver over into the possession of the said P. S. Ramseur all of the said property; also came the said R. L. Dalby, liquidating agent of the said Interstate National Bank of Texarkana, and filed his answer, setting up claim of title and right of possession to all of the real estate above described. On the 28th day of September this cause came on for hearing before the referee, Texarkana, Tex., and judgment of the court was rendered in favor of the said Rollin W. Rodgers, as against the said P. S. Ramseur, and, on application of the said P. S. Ramseur and the said Rollin W. Rodgers for questions to be certified to the judge, the said questions were certified. Upon a hearing of the said certified questions by the judge, the case was referred back to the referee, to be administered in accordance with the provisions of the acts of congress relating to bankruptcy, dismissing as to said Ramseur. On the 7th day of October, A. D. 1899, a writ of sequestration was issued out of the district court of Bowie county, Tex., at the suit of the said P. S. Ramseur, as plaintiff, against the said R. W. Rodgers, trustee, and the sureties on his bond as trustee, and A. F. Shapleigh Hardware Company, one of the creditors of said bankrupt. By virtue of said writ of sequestration, T. S. Edwards, sheriff of Bowie county, Tex., took possession and control of all the said property out of the possession and control of said Rollin W. Rodgers, trustee. On the 8th day of October, A. D. 1899, the said Rollin W. Rodgers, trustee, filed in the district court of the United States for the Eastern district of Texas his application for an order of court enjoining and restraining the said T. S. Edwards and said Ramseur, their agents, attorneys, and deputies, from further interference with the said trustee's possession of the said property, which said prayer was granted by the Honorable D. E. Bryant, judge of said court, and in compliance with said order the said property was delivered back into the possession of the said trustee. On the 16th day of October, 1899, the said P. S. Ramseur filed his petition of intervention in this cause, making himself a voluntary party to this suit. On the 17th day of November this cause came on finally to be heard before the referee at Texarkana, Tex., and judgment was rendered in favor of Rollin W. Rodgers, trustee, against P. S. Ramseur, intervener, and the Interstate National Bank of Texarkana, and in favor of the People's Building, Loan & Savings Association of Syracuse, N. Y., for the sum of $5,459.01, together with all costs of suit, and an order foreclosing their deed of trust lien on the real property as heretofore described, and an order directing said R. W. Rodgers to sell the said real property, and appropriate the proceeds of said sale to the payment of said lien. On the 22d day of December, A. D. 1899, Rollin W. Rodgers, trustee, filed his exceptions to the allowance to the claim of the People's Building, Loan & Savings Association, and his application to certify questions to the judge. On the 28th day of December, A. D. 1899, P. S. Ramseur, intervener, filed his application to have questions certified to the judge.

On the intervention of Ramseur, the referee found and certified the following as facts to the district court: "On the 26th day of December, 1893, J. C. Whitener owned the property in controversy, but on the last-mentioned date assigned the same by deed of trust to S. B. Andrews, assignee. J. C. Whitener, the bankrupt, on December 26, 1893, made an assignment under the general assignment laws of Texas, conveying all of said property to one S. B. Andrews, as assignee. S. B. Andrews qualified under the state law as assignee, and took possession of the property in controversy. On the 26th day of December, A. D. 1893, J. C. Whitener, the bankrupt, made a deed of assignment, naming S. B. Andrews as assignee, by which deed of assignment the property in controversy was transferred to S. B. Andrews. Before the assignment was made, S. B. Andrews was a resident of the state of Arkansas, and was cashier of the First National Bank, and changed his residence to Texas two or three days

before the deed of assignment was made, at the request of the said J. C. Whitener; that he, the said Andrews, might qualify as assignee. Before the said assignment was made there was an understanding and agreement between the said J. C. Whitener and S. B. Andrews to the effect that Whitener would make Andrews assignee, and that Andrews would hold the property as assignee, until arrangements could be made by Whitener by which he (Whitener) could get possession and control of the said property. This agreement was carried out between Whitener and Andrews, P. S. Ramseur being the party or person agreed upon to become the purchaser for Whitener. Ramseur is the half-brother of Whitener. On the 12th day of February, Andrews transferred, by bill of sale, the undertaker's business and all the stock connected therewith, and the book and book accounts of said business, for which Ramseur gave his various promissory notes, with the understanding between himself and Andrews and Whitener that the property should be immediately turned over to Whitener, and that Whitener should pay off the said notes and conduct the said undertaker's business. On the 20th day of February, Andrews transferred by deed all of the real property heretofore described in controversy, for which Ramseur gave his note for two hundred and fifty dollars, at which time it was understood and agreed between the said Ramseur and Whitener that he, the said Whitener, should take possession of the said property and pay the said notes. On the 1st day of June, A. D. 1894, Andrews transferred by bill of sale the livery stock of horses, wagons, buggies, harness, etc., as described, the property in controversy; for which he (the said Ramseur) gave his notes for three thousand dollars, payable at different times; and that he (the said Whitener) should take possession and control of the said property, and pay off the said notes,—all of which agreements between Ramseur and Whitener were carried out by Whitener. No consideration was paid by Ramseur for the said property, or any part thereof, except his promissory notes, which said notes were to be, and in fact were, paid by the said Whitener. All of the transactions between Andrews and Ramseur, including negotiation and sale of the said property, were conducted and consummated or participated in by Whitener, and between Andrews and Whitener. Ramseur allowed Whitener the use of his (Ramseur's) name, that he (Whitener) might become the purchaser of all of the said property, Ramseur being solvent and Whitener insolvent. All of the said transactions were in performance of the original agreement entered into between Whitener and Andrews, and were for the purpose of defrauding the creditors of Whitener, and to enable Whitener to get possession of all of the said property, and appropriate it to his own use and benefit, and avoid the payment of his honest debts. From the date of the said transfers from Andrews to Ramseur, the said Whitener has had continuous possession of all of the said property transferred, exercised full ownership and control of same, appropriated the rents and profits arising therefrom to his own use and benefit, and has used and enjoyed the same as his own, until he was commanded, by an order issued out of this court, to turn over and deliver the same to the said Rollin W. Rodgers, trustee. Prior to the said assignment from Whitener to Andrews, the said Whitener sent out a large quantity of merchandise from his hardware stock, a portion of which was returned to him after the said transfer from Andrews to Ramseur (Whitener). A large quantity of barbed wire was sent to the address of P. S. Ramseur, Hooks, Tex., which was afterwards returned to Whitener after the said sale from Andrews to Ramseur. The running account between Whitener and Ramseur, beginning before the said assignment, continued during the said assignment, while Andrews was assignee, and after the said transfer from Andrews to Ramseur. Ramseur has never at any time received any of the rents or profits from the real estate or livery stable or undertaker's business, but the same had been appropriated by Whitener."

And the referee also reported the following conclusions of law and fact: "P. S. Ramseur has never at any time had any interest in the said property, or any part thereof, except such title as he acquired through the deed and bills of sale from Andrews to Ramseur. He has never had any real interest in the said property, except such interest as accrued by reason of his holding the legal title to said property in trust for the said Whitener. The statute of limitation does not apply in this case, under the facts proven. The whole

transaction was fraudulent, and, if Ramseur ever acquired any title to the property in controversy, he held the same in trust for J. C. Whitener. As intervener in this case, P. S. Ramseur is bound by the record of the case made prior to the filing of his petition in intervention, and he cannot reopen the evidence to interpose objections to the same."

The intervener, Ramseur, excepted to the findings of the referee, and brought the matter before the district court, the judge of which, after citing the case, found the facts to be as follows: "That on the 20th day of December, 1893, the bankrupt, J. C. Whitener, owned and was in possession of a hardware store, an undertaking establishment, and a livery stable in Texarkana, in Bowie county, Tex., and the real estate situated in said county and state now in controversy in this cause; and on said date made a general assignment of all his property to S. B. Andrews, as assignee, for the benefit of all his creditors, under the general assignment laws of the state of Texas. Said S. B. Andrews immediately accepted the trust, and qualified by taking the oath, and making a bond, in accordance with the provisions of said laws. After qualifying, said S. B. Andrews immediately took possession of all of the property and assets of the estate of said J. C. Whitener, and proceeded to administer said estate. Thereafter, on the 12th day of February, 1894, he sold and delivered to intervener, P. S. Ramseur, the entire hardware and undertaker's business and stock for the sum of seven thousand five hundred forty and $77/100$ dollars, this being fifty per cent. of the invoice value, and on the same day he sold intervener the notes and book accounts belonging to said business for the sum of one thousand dollars. The real estate belonging to the estate of said J. C. Whitener was valued at $6,000, and was incumbered by mortgages to the extent of $5,500, and the said Andrews, on the 20th day of February, 1894, sold, and by deed of conveyance transferred, to intervener all of said real estate, for the consideration of two hundred and fifty dollars, and the assumption of the payment by intervener of said mortgages. On the 1st day of June, 1894, said S. B. Andrews sold and delivered to intervener the livery-stable business and stock, including vehicles, horses, harness, etc., for the sum of three thousand dollars. The prices paid by intervener were adequate and fair. Intervener, at the time of these purchases, was solvent, worth between seventy-five and one hundred thousand dollars, and in paying for said property executed and delivered to said S. B. Andrews his promissory notes. Said notes were all paid, and the money went into the hands of said Andrews, as assignee of the estate of J. C. Whitener. Said S. B. Andrews offered all of said property for sale upon the open market, and his sale to intervener was bona fide and passed a good title. Said purchases were made by intervener in good faith, and for a good and valuable consideration, and he has openly claimed and held the same, and exercised ownership and control of the same continuously since its purchase. Intervener, by these purchases, acquired a good title to all of said property, and has continuously held the same, except that on the —— day of ——, 1896, he sold all of the hardware business and stock to one J. E. Benjamin. There was no collusive agreement or arrangement between S. B. Andrews, J. C. Whitener, and intervener, P. S. Ramseur, that said intervener should be the purchaser of said property, and there was no fraud upon the part of intervener in the purchase of any of said property, and no intention upon his part in the purchase of said property to defraud any of the creditors of said J. C. Whitener, or to purchase said property and hold the same in his name for said J. C. Whitener, and since his purchase of same he has not held it in his name in trust for said J. C. Whitener. After his purchase of said property, intervener placed said J. C. Whitener in possession of said property to run it under his direction as his agent, and agreed to and did allow said Whitener the sum of seventy-five and one hundred dollars per month as wages to live on. Intervener had large business interests at different towns and cities, and conducted his business at these different places through agents, and did not give his entire personal attention to his business at any particular place. He made frequent visits to Texarkana, and personally inspected and inquired into his business and property there, and had it rendered for taxes, and caused the taxes to be paid. He resided at Dekalb, thirty-three miles from Texarkana, where he had large interest in the Dekalb Lumber Company, a sawmill plant. His bookkeeper at Texarkana frequently sent to

him at Dekalb statements of the condition of the business at Texarkana. He found that his hardware business at Texarkana was losing money, and sold it in 1896 to J. E. Benjamin, the consideration being $3,500, of which the sum of $1,900 went to pay off notes given by intervener for the purchase of the property from Andrews, and held by the bank, and the balance was paid on indebtedness of said hardware business. He received no profits from his other business at Texarkana. At the time the trustee took possession of this property, it was in the possession of said J. C. Whitener as agent for intervener. The claims of the creditors represented by the trustee are for debts created by said J. C. Whitener prior to his assignment to S. B. Andrews. None of them accepted under the assignment made by said Whitener to Andrews, but have never questioned intervener's title to the property sold and conveyed to him by Andrews, as assignee of Whitener's estate, until after the filing of a petition in bankruptcy and in said bankruptcy proceeding."

The district judge thereupon gave judgment in favor of Ramseur against the trustee for all the property claimed by the intervener, for all rents and profits of the same during the time in trustee's possession, ordered a writ of restitution, and that the trustee should pay all the costs out of the estate of the bankrupt in his hands; to all of which the trustee at the time duly excepted, and thereafter sued out this appeal, assigning 33 specific errors in finding the facts of the case, and 8 errors of mixed law and fact.

A motion is made to dismiss this appeal upon the grounds (1) that the judgment sought to be reviewed is not such a judgment or decree as may be appealed from under the provisions of the bankrupt act; and (2) that the appeal bond in this case, if one is required to be filed, was filed after the time had expired, as fixed by law, in which an appeal bond may be filed in causes of this character. As to the appeal and bond, the facts are that the judgment was rendered on the 27th day of January, 1900. On February 3d, an appeal and supersedeas were allowed to the trustee without bond. On February 7th, the appellee applied for execution of the judgment, which application was heard on the 14th day of February, 1900, when the court ordered that the order theretofore made, suspending and superseding the execution of said judgment without an appeal bond, be set aside, and the following was entered: "The supersedeas appeal bond of the said R. W. Rodgers is now fixed at the sum of $7,500, should he desire to prosecute his appeal and suspend said execution; should he desire to appeal without suspending the execution of said judgment, then his appeal bond is fixed at the sum of $500. It is further ordered that he make said bond and present it to me for approval on or before the 24th day of February, 1900, and in default of this it is ordered that the clerk of this court issue all necessary process to enforce said judgment." The supersedeas appeal bond, under this last order, was made on the 21st day of February, 1900, and it appears to have been approved and ordered filed as of date February 24, 1900.

W. T. Hudgins and Oscar D. Scott, for appellant.
E. B. Kruttschnitt and John J. King, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). As the property, the ownership of which is in dispute, was in the possession of the trustee in bankruptcy as a part of bankrupt's property to be duly administered, the district court had jurisdiction to issue an injunction restraining the proceedings under a sequestration issued from the district court of Bowie county, Tex., at the suit of Ramseur, plaintiff, against Rodgers, trustee, and to compel the return of the property to the trustee. See White v. Schloerb (decided in the supreme court May 28, 1900) 20 Sup. Ct. 1007, 44 L. Ed. 1183. The property being in the custody of the district court sitting in bankruptcy, that court had jurisdiction to entertain the intervention

filed by Ramseur, claiming the property, and to hear and determine the issues presented by the intervention, not only on general principles (see Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625), but under the specific provisions of section 2 of the bankruptcy act of 1898, as follows:

"That the courts of bankruptcy as hereinbefore defined, viz. the district courts of the United States in the several states, the supreme court of the District of Columbia, the district courts of the several territories, and the United States courts in the Indian Territory and the district of Alaska, are hereby made courts of bankruptcy, and are hereby invested, within their respective territorial limits as now established, or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers and during their respective terms, as they are now or may be hereafter held, to * * * (6) bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy; (7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided: * * * (15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act. * * * Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated."

The jurisdiction of the district court, as thus granted, is unquestionably bankruptcy jurisdiction, and not general jurisdiction to hear and determine controversies between adverse parties. The right to appeal from the decision of the district court in bankruptcy proceedings is given in the bankrupt law of 1898 (section 25), in the following cases: (1) From a judgment adjudging or refusing to adjudge the defendant a bankrupt; (2) from a judgment granting or denying a discharge; and (3) from a judgment allowing or rejecting a debt or claim of $500 or over.

The property in dispute was not surrendered by the bankrupt. It came into the possession of the bankruptcy court on an order of the referee declaring it to be a part of the bankrupt's estate, and the proceeding below was a suit to recover the property from the trustee as property that belonged to the plaintiff, and not to the bankrupt's estate, and the judgment of the court is one declaring the plaintiff's ownership, and ordering a restitution of the property, with costs.

The question presented on the motion to dismiss is whether this judgment of restitution is a judgment allowing or rejecting a debt or claim of $500 or over. It is not contended that it is a debt, but it is contended that it is a claim, within the meaning of the statute. The word "claim," as used in the above connection,—"debt or claim of $500 or over,"—seems to mean a moneyed demand, the same as "debt," and was used, not to enlarge, but to render certain. The word "debt," as defined in the first section of the statute, includes any debt, demand, or claim provable in bankruptcy. The word "claim," although frequently used in the bankruptcy act, is not specifically defined; but section 57 of the act is entitled, "The Proof and Allowance of Claims," and the word as therein used in every instance refers to, and means only, a moneyed demand. Paragraph "k" of the section is to the effect that claims which have been allowed may

be reconsidered for cause, and reallowed or rejected, in whole or in part, according to the equities of the case, before, but not after, the estate has been closed. To give the word "claim" the broad meaning contended for would be to practically enlarge the statute so as to give the right of appeal in every disputed claim involving $500 or over occurring in the administration of the bankrupt's estate; for all contests therein, including questions of discharge of the bankrupt and selling property, can easily be shown to be claims, within the broad meaning of the word "claim,"—a demand or supposed right. The proceeding in the court below was a proceeding in the administration of the bankrupt's estate, and was in no proper sense a proceeding to allow or reject a debt or claim against the bankrupt's estate, and we are inclined to the opinion that, in matters of administration in the bankruptcy court, outside of the question of bankruptcy vel non, the discharge of the bankrupt, and the allowance of debts or demands over $500, no appeal is allowed or contemplated by the bankruptcy law of 1898.

It is, however, contended that, if no right of appeal exists, then the application for an appeal, as perfected in this case, may be treated as a petition in equity to revise, under paragraph "b," § 24, to the effect that the several circuit courts of appeals shall have jurisdiction in equity, either interlocutory or otherwise, to superintend or revise in matters of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction; such power to be exercised on due notice and petition by any party aggrieved. Judge McCormick, speaking for this court in Re Abraham, 35 C. C. A. 608, 609, 93 Fed. 783, 784, said:

"The right of appeal, as given by the statute, can neither be enlarged nor restricted by the district court or by this court. The regulation of appeals is a regulation of jurisdiction. It was not without purpose, therefore, that the exercise of the superintending jurisdiction of this court is not placed by the act under specific regulations and restrictions, like the proceeding by appeal or writ of error. It seems clear to us, from a consideration of the various provisions of the act, and particularly of the clause conferring, superintending, and revising jurisdiction on this court, that it was the intent of congress that the exercise of such jurisdiction could be easily invoked by any party aggrieved, and should be freely exerted by the circuit court of appeals, without the hindrance of technical trammels. In analogy to the rule prescribed for allowing appeals, and to the practice in allowing writs of error in cases at law, the petition for revision may be presented to, and allowed by, a judge of the court of bankruptcy, or any one of the judges of this court. It should, with reasonable clearness, show the action of the court which it seeks to have revised in matter of law, and reasonable notice thereof should be given to the adverse party. The appeal prayed for, allowed, and perfected in this case, bringing up, as it does, the record of the pleadings, which present all the facts, either verified by the petitioning creditors, whom the appellee represents, and cannot be allowed to dispute, or averred by Bernheimer, and admitted by the demurrer, showing all of the action of the judge thereon, including the last order from which the appeal was taken, may embrace more than it was necessary to put into a petition for revision; but it clearly does embrace a sufficient statement of the facts and action of the court thereon sought to be revised in matter of law. No question has been raised, or can be raised, as to the sufficiency of the notice. It is apparent from the proceedings that the appeal was prayed for and allowed in open court, in the presence of all the parties or their attorneys, at the very instant that the judgment sought to be revised was announced. They thus had, or must be charged with, due notice. We conclude

that the motion to dismiss the proceedings in this court should not be granted. We could, did we deem it necessary, permit the party aggrieved now to file his petition for the revision he seeks, and, upon due or reasonable notice thereof being given to all parties entitled thereto, proceed thereon in the exercise of our jurisdiction. We have not deemed it necessary or meet in this case to have resort to that course, but have proceeded to consider the case on its merits, in like manner as if a formal petition had been presented and due notice thereof given. We may not feel justified in exercising our discretion to the same extent in all cases which may be brought to us in the future. The proceedings in this case in the district court were had before the general orders in bankruptcy took effect, or had been widely published, and become generally known to parties or counsel, or the judges of the inferior courts. The provisions of the act with reference to appeals to this court, and to obtaining the superintendence and revision it may exercise, are, in a measure, new, and precedents under the former law, if they were uniform (which they are not), could not be safely followed."

If, following this precedent, we should be disposed to treat the appeal herein as a petition in equity, the following difficulty presents itself: Under the express provisions of the statute, on a petition in equity to revise proceedings, only questions of law can be considered in the appellate court, and on this appeal the questions presented all involve matters of fact; no specific questions of law, as ruled by the district court, being assigned as erroneous. It seems clear that this court has no jurisdiction in this case, either on appeal or on a petition to revise. The appeal is dismissed.