BRUMBY v. JONES et al.

(Circuit Court of Appeals, Fifth Circuit. October 2, 1905.)

No. 1,402.

BANKRUPTCY—EQUITY JURISDICTION OF DISTRICT COURTS—PLENARY SUITS.

The equity jurisdiction conferred on district courts by Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], is limited to matters connected with the administration of bankrupt estates, and such court is without general equity jurisdiction to entertain a plenary suit by a third person to cancel the satisfaction of a mortgage and declare a trust in mortgaged property of a bankrupt which is not in the possession of his trustee, nor a part of the estate for distribution, and in which his general creditors have no interest.

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of Georgia, in Bankruptcy.

Mrs. M. C. Jones, in her own behalf, and as the next friend of Annie L. Jones and J. P. Jones, filed a petition of intervention against John H. Wykle, as trustee in bankruptcy of T. R. Jones and L. S. Mumford, in the District Court of the United States for the Northern District of Georgia. The allegations of the petition are, in substance, that on October 8, 1890, J. P. Jones died, leaving a will; that T. R. Jones, the bankrupt, accepted the nomination and appointment of executor under said will; and that the petitioners are the only legatees and beneficiaries under the will. On December 14, 1896, T. R. Jones made and executed unto T. R. Jones, executor of the estate of J. P. Jones, deceased, a mortgage on a certain parcel of land owned and occupied by said T. R. Jones and family as a homestead, situated in Bartow county, Ga., to secure a debt owed by him to T. R. Jones, executor as aforesaid; he having used the property of the estate. On October 4, 1901, said T. R. Jones, as executor of the will of J. P. Jones, deceased, caused to be entered across the face of said mortgage, in the record book of mortgages in the Clerk's office of the superior court of Bartow county, Ga., "Satisfied and canceled"; that on April 2d, 1902, said T. R. Jones made and executed to one J. G. Lowry a mortgage on the same piece of land, which mortgage was subsequently, in 1902, transferred to L. S. Mumford; that the sum for which the said mortgage to T. R. Jones, executor, was given was not paid at the time said entry of satisfaction and cancellation was made, nor has any part thereof been paid since; that at the time of the cancellation of said mortgage on October 4, 1901, and at the time of making the mortgage to said Lowry, T. R. Jones was insolvent; that he was adjudicated a voluntary bankrupt on January 31, 1903, and that on February 27, 1903, John H. Wykle was duly appointed trustee for the estate of said bankrupt. The prayer of the petition is that the cancellation of the mortgage by T. R. Jones, as executor, be annulled; that the mortgage be declared and decreed a first and superior lien on said property; and that the property be sold by the trustee, and the proceeds of said sale be devoted to the payment of the claims of the petitioners.

On June 24, 1903, John H. Wykle, trustee of T. R. Jones, bankrupt, filed an answer to the said petition of intervention, neither admitting nor denying the material statements contained therein, having no personal knowledge of the same, and stating that the property described in the said petition was then occupied by the family of said T. R. Jones, the bankrupt; and he prayed that the same be turned over to him to be administered as part of the estate of said bankrupt, and that he be instructed to hold the proceeds thereof until the further order of the court. On January 28, 1904, Mrs. S. O. Brumby was allowed to be made a party defendant to said petition, instead of L. S. Mumford. On January 29, 1904, said S. O. Brumby filed a plea to the jurisdiction of the court, which plea was overruled. She then filed general and special demurrers to the petition, which were likewise overruled. Whereupon said defendant, Brumby, filed an answer to the petition, averring that, for want of sufficient information, she could neither admit nor deny the

allegations thereof, and prayed that the petitioners be held to strict proof of the same. Further answering, she alleged that the mortgage referred to in the petition as having been transferred to L. S. Mumford was on October 9, 1903, transferred by said Mumford to J. G. Lowry, and on the same date was transferred by said Lowry to her. Subsequent to the filing of the answer of John H. Wykle of June 24, 1903, and some time subsequent to December 14, 1903, said John H. Wykle, trustee, filed a further answer, stating that, as trustee and representing the unsecured creditors, he disclaimed any interest in the matters involved in the contentions of the parties as contained in said petition, further than to carry out the direction and order of the court in the premises.

It appears from the record that T. R. Jones was named and appointed as executor of the will of J. P. Jones, deceased, to act without bond, and to settle with the beneficiaries under the will when the youngest child reached the age of 21 years, which, it appears, would be in October, 1909. It also appears that on December 14, 1896, the date of the mortgage made by T. R. Jones to T. R. Jones, executor, there was a balance on hand due the estate of J. P. Jones, deceased, of $7,097.76, and that on February 17, 1903, about 15 days before the filing of the original petition herein, the balance on hand due said estate had been reduced to $5,794, as shown by the returns of said T. R. Jones, as executor, to the ordinary of the county, and that during the interim said executor provided for the maintenance and support of the family of the deceased out of the funds of the estate. The returns made by said executor to the ordinary, from time to time, show that he charged himself, in his accounts, with interest on the amount of the balance in his hands due the estate. It further appears that at the time T. R. Jones made the mortgage to himself, as executor of the estate of J. P. Jones, deceased, there were judgments coming against him, and he made the mortgage to enable him to go on and make money to pay off the judgments and not have his home sold; that he subsequently paid off the judgments and canceled said mortgage; that said Jones deposited the mortgage in the proper office for record, and the same was duly recorded, after which he repossessed himself of it, and has since retained it in his possession.

On May 13, 1904, the following order was made and entered by the District Court: "First. That the cancellation by T. R. Jones, executor, dated October 14, 1901, of the mortgage dated December 14, 1896, given by T. R. Jones to T. R. Jones, executor, be and the same is hereby annulled. Second. It is further ordered, adjudged, and decreed that the said mortgage given by T. R. Jones to T. R. Jones, executor, dated December 14, 1896, recorded in Book M of Mortgages, p. 233, in the office of the clerk of the superior court of Bartow county, Ga., is hereby held, declared, and decreed to be the best, first, and superior lien and mortgage on and covering the property in said mortgage described. And it is decreed that the above-described mortgage be, and the same is, superior to the mortgage now held by Mrs. S. O. Brumby, defendant, in this intervention, and covering this same property. Third. It is furthermore ordered, adjudged, and decreed that the amount of said mortgage is $5,794, principal, and $557.58, interest to date, at the rate of 7 per cent. per annum. Fourth. It is furthermore ordered, adjudged, and decreed that the property by said mortgage covered be sold to the highest bidder, free from incumbrance, on the first Tuesday in July, 1904, by John H. Wykle, trustee, at public sale, after notice published once a week for four weeks in the newspaper in which the notice of sheriff's sales in Bartow county are published. Sixth. It is furthermore ordered, adjudged, and decreed that the proceeds of said sale be applied to the payment of, first, taxes due on said property; second, to the cost and expense of this litigation, and the sale of the property, as aforesaid; third, to the satisfaction of the mortgage hereinbefore established; fourth, the balance, if any, to be applied as by law directed. Seventh. It is furthermore ordered, adjudged, and decreed that this case, including exceptions and objections to all rulings made on demurrers and pleas since November 17, 1903, be open for appeal or petition for review for 20 days from the date of this decree, and all appeals or other motions for review must be filed and signed within that time."

The several rulings of the District Court on the questions raised in the case are brought here for review.

John T. Morris, for petitioner.

Barry Wright, for respondents.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

TOULMIN, District Judge, after stating the facts as above, delivered the opinion of the court.

In effect, there are only two questions in this case, either of which, if decided in favor of the appellant, will control its decision and require a reversal of the case. These are the questions of jurisdiction, and of the validity of the mortgage of T. R. Jones to T. R. Jones, executor of the estate of J. P. Jones, deceased. The primary object of the petition (which is in the nature of a bill in equity) filed in the case is the annulment of the cancellation of said mortgage.

1. The first question presented for our consideration is as to the jurisdiction of the bankrupt court to hear and determine the controversy between the real parties to this cause. The subject-matter of the suit is one of equitable cognizance purely. The District Court does not possess the general power to entertain a suit in equity, and, unless the bankrupt act has conferred upon it jurisdiction to entertain a plenary suit in equity, such a suit cannot be maintained. Havens & Geddes v. Pierek, 120 Fed. 244, 57 C. C. A. 37; Bardes v. Bank, 178 U. S. 535, 20 Sup. Ct. 1000, 44 L. Ed. 261; First National Bank v. Chicago T. & T. Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051. The bankrupt act confers on the district courts, as courts of bankruptcy, such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings. As courts of bankruptcy, they are vested with power to collect, reduce to money, and distribute the estates of bankrupts, and to determine controversies in relation thereto. Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545, 546 [U. S. Comp. 1901, pp. 3420, 3421]. We think it clear that the controversies referred to relate to the collection, sale, and distribution of such estates. The jurisdiction of the district court, as granted by the bankruptcy act, is unquestionable bankrupt jurisdiction, and not general jurisdiction to hear and determine controversies between adverse third parties, which are not strictly and properly a part of the bankruptcy proceedings. In re. Whitener, 105 Fed. 180, 44 C. C. A. 434; Bardes v. Bank, supra; First National Bank v. Chicago T. & T. Co., supra; Real Estate Trust Co. v. Thompson (D. C.) 112 Fed. 945.

The controversy involved in this suit is not one relating to the collection and distribution of the bankrupt's estate. It is not a controversy with reference to property in the actual possession of the bankruptcy court, or where it has been taken from the possession of its trustee or receiver without its authority. It is not one arising in the bankruptcy proceedings in reference to property subject to distribution to the general creditors of the bankrupt, or one where, by the nature of the controversy, power is conferred on the court to determine conflicting liens, or the validity and priority of liens between secured creditors.

This is an independent controversy between third parties who claim equities, as between themselves, in certain property of the bankrupt, which is not in the possession of the trustee, or a part of a fund for distribution among the general creditors of the bankrupt.

The complainants, M. C. Jones, Annie L. Jones and J. P. Jones, are not creditors of T. R. Jones, the bankrupt, and they do not claim to be such. Their claim is not a provable debt against the bankrupt's estate. It is not a fixed liability against said T. R. Jones, but contingent upon a settlement of his administration as executor of the estate of J. P. Jones, deceased, and an ascertainment thereon of his indebtedness, if any, to said estate. Moreover, this controversy is one in which the trustee in bankruptcy and the unsecured creditors have no interest. The trustee states that, as trustee and representing the unsecured creditors, he disclaims any interest in the matter involved in the contentions of the parties, and it was admitted at the hearing of this cause that the indebtedness of T. R. Jones to the estate of J. P. Jones, deceased, and the claim of Mrs. S. O. Brumby, each exceeds in amount the value of the property covered by the mortgages in controversy. It is clear that the creditors of the bankrupt's estate represented by the trustee have no interest in this controversy, for, under the admitted facts of the case, the property in question cannot be subjected to the payment of their debts. While the trustee would be entitled to any excess arising from a foreclosure sale of the property, after payment of the mortgage debt and cost of foreclosure he is not entitled to the mortgaged property. Carling v. Seymour Lbr. Co., 113 Fed. 483, 51 C. C. A. 1. "A court of bankruptcy will not order a sale of a bankrupt's real estate discharged of liens, unless the court is satisfied that the interest of the general creditors would thus be advanced." In re Styer (D. C.) 98 Fed. 290.

There is no issue between the parties to this controversy as to conflicting liens or the validity and priority of liens, and can be none until there has been an annulment of the cancellation of the mortgage made by T. R. Jones to T. R. Jones, executor, by a court of competent jurisdiction. This suit is in substance and effect a bill in equity to set aside and annul the cancellation of the mortgage made by T. R. Jones to T. R. Jones, executor, etc.; to declare a trust in favor of complainants in the property covered by said mortgage; to decree the same a first and superior lien on said property, and to have the property sold by the trustee in bankruptcy, and the proceeds of the sale devoted to the payment of the claims of the complainants. They are the legatees and beneficiaries under the will of J. P. Jones, deceased, of which T. R. Jones is the executor. They may have a claim—a moneyed demand—against said T. R. Jones personally at some future time, but they do not now seek to recover any sum of money out of his bankrupt estate. They seek only to have declared in their favor, as such legatees and beneficiaries, a trust in certain of his property as security for their contingent claim against said T. R. Jones, to be subjected to its payment when the same shall have been ascertained and become due.

If the mortgage by T. R. Jones, individually to himself as executor, to secure a debt which he owed to the estate of which he was executor,

141 F.—21

is valid and effective, and charged the property covered thereby with a valid trust, such property will be followed in equity into whosesoever hands it comes, and he will be charged with the execution of the trust, unless he is a purchaser for value and without notice. 20 Am. & Eng. Encyc. of Law (2d Ed.) p. 1072. The proceeding to declare and enforce such trust must be had in a court of equity, whose peculiar jurisdiction and province it is to determine such questions. Perry on Trusts (5th Ed.) § 38. A court of equity has original and inherent jurisdiction to declare and enforce trusts, and will interfere in cases of fraud to set aside acts done which involve a breach of a legal or an equitable duty or trust, which are injurious to another. Fraud, as understood and defined in a court of equity, includes all acts which involve such breach of duty. 1 Brickell's Digest, p. 662; 1 Hill, on Mortg. p. 525, § 58. In such proceeding in equity, we think that T. R. Jones, individually, and as executor of the will of J. P. Jones, deceased, as well as Mrs. S. O. Brumby, would be necessary parties, while the trustee of T. R. Jones, the bankrupt, might be a proper, but not a necessary, party. Perry on Trusts, §§ 875, 877; 15 Encyc. of Pl. & Prac. pp. 584–587.

The District Court has no such original and inherent jurisdiction as that above referred to. The bankrupt court has jurisdiction, as an ordinary court, of suits at law and in equity brought by and against a trustee in bankruptcy in reference to alleged property of the bankrupt, or to claims alleged to be due from or to him, but it has no jurisdiction of suits at law or in equity between private parties. Bardes v. Bank, supra; First Nat. Bank v. Chicago T. & T. Co., supra; In re Whitener, supra; Real Estate Trust Co. v. Thompson (D. C.) 112 Fed. 945.

The latest decision on this subject by the Supreme Court that has come to our attention is in the case of Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157. While that case would seem to somewhat modify the decision in Bardes v. Bank, it does not overrule it. It, however, is clearly distinguishable from the case at bar. The bill in the case cited was filed by the trustee in bankruptcy against third persons who had possession of goods and accounts alleged to belong to the bankrupt, which had been in the actual possession of the bankruptcy court through its receivers, and which were delivered by them to the defendants without an order or authority of the court; the defendants claiming the right of possession as owners or lienors under alleged transfers to them by the bankrupt. The property in question was personal property alleged to have been fraudulently transferred by the bankrupt to the defendants by certain security instruments for debts claimed to be due them. The actual possession of the property had not been delivered by the bankrupt to the defendants, but such possession was acquired after the bankruptcy proceedings had been commenced; and was so acquired by collusion between the said receivers and the defendants. The purpose and prayer of the bill was that said security instruments be declared invalid, fraudulent, and void, and that the complainant be decreed the owner of the goods and accounts. The court held that, under the allegations of the bill, the District Court

had the right, in a proceeding in the nature of a plenary action, to determine the rights of the parties, and to grant full relief in the premises, if the allegations of the bill should be sustained. In the course of the opinion, the court said:

"The court had possession of the property, and jurisdiction to hear and determine the interests of those claiming a lien therein or ownership thereof." Whitney v. Wenman, supra.

In the case at bar the court did not have possession of the property, and the complainants in their bill do not claim ownership thereof or a lien thereon; but, as we have said, they seek to have a trust declared in the property, and a superior lien thereon decreed in their favor.

2. Was the mortgage from T. R. Jones, individually, to T. R. Jones, as executor, ever valid and effective? The contention of appellant is that it is invalid for want of contracting parties. Requisites of a valid deed of conveyance are, among other things, contracting parties—a person able to contract, and a person able to be contracted with—and delivery. 9 A. & Eng. Encyc. of Law (2d Ed.) 107, 108, and note. The Supreme Court of Vermont, in Burditt, Adm'r, v. Colburn, Adm'r, 63 Vt. 231, 22 Atl. 572, 13 L. R. A. 676, holds that such a mortgage as that in question here "is invalid for want of contracting parties."

It is further claimed by the appellant that said mortgage is invalid and ineffective because never delivered. Delivery is an essential part to the due execution of a mortgage as of a deed. Parmalee v. Simpson, 5 Wall. 81, 18 L. Ed. 542; Younge v. Guilbeau, 3 Wall. 636, 18 L. Ed. 262; 9 Am. & Eng. Encyc. of Law (2d Ed.) 152. "The real test of delivery is this: Did the grantor by his acts, or words, or both, intend to divest himself of title? If so, the deed is delivered." 9 Am. & Eng. Encyc. of Law (2d Ed.) 154. To constitute delivery of a deed, it must clearly appear that "it was the intention of the grantor that the deed should pass the title at the time, and that he should lose all control over it. This intention may be established by his acts." Gould v. Day, 94 U. S. 405, 24 L. Ed. 232. If he leaves it for record, some authorities hold that the law presumes that he intends to divest himself of title, and, consequently, that the deed is delivered. Other authorities hold that further evidence is necessary. 9 Am. & Eng. Encyc. of Law, supra, 159, 160, and note. But it is well settled that such presumption of delivery may be rebutted; and, if it appears that the grantor did not intend to divest himself of title, the deed will not be delivered. The fact that the grantor takes control of the instrument after it is recorded, and retains actual dominion over it, and also continues in the possession of the property covered by the instrument, are circumstances to be considered in determining the intention of the grantor. Authorities, supra. "The books abound with rulings which declare that the question of delivery vel non, when the testimony is indeterminate or ambiguous, is and must be a question of intention with which the ambiguous or disputable act or acts were done or performed." Alexander v. Alexander, 71 Ala. 298; Goodlett v. Kelly, 74 Ala. 220.

In the case at bar the mortgagor, T. R. Jones, took control of the mortgage after he had it recorded, retained control and dominion over it, and, after the lapse of a few years, caused to be entered of record on

the mortgage, "Satisfied and canceled." Whether he took control and dominion of the mortgage after its registration in his individual capacity and right, or in that of executor of the will of J. P. Jones, is left to inference only. It is a question of fact to be determined by the circumstances. He executed the mortgage, and placed it on record without the knowledge or assent of those who are the legatees under the will of J. P. Jones, and who claim to be the beneficiaries of the mortgage. The evidence tends to show that he made the mortgage and had it recorded with the intent to hinder, delay, or defraud certain of his creditors. He testified that, when he executed the mortgage, he did it because there were judgments coming against him; and that he did it to hinder and delay those judgment creditors from "worrying him about that time," and until he could get into a position to pay them. He further testified as follows:

"At the time I gave the estate this mortgage, there were a lot of judgments coming against me. * * * I thought it was the proper thing for me to do, in order to enable me to go on and make money to clear up these things, not to have the home and all sold, and I was fortunate enough to make money to pay off those judgments."

He testified that he had this idea after he went to Atlanta in 1901, and that he paid off the judgments. He said:

"I felt this way, that the debt for which I gave the mortgage or obligation to these other parties had been removed, and, if I had the power to make it, I had the power to cancel it after these debts had been paid for which I gave it, and that was the reason I did it."

We understand this to mean that he made the mortgage to the estate to save the property covered by it from being taken by his creditors under their judgments, and, when they were paid off, he felt he had the power to cancel the mortgage, if he had the power to make it, and especially so, as the debts on account of which he gave it had been paid, all of which shows the motive and intent with which he made the mortgage, and, in our opinion, clearly shows that he had no intention of delivering the mortgage, by its registration, for the benefit of the estate of J. P. Jones; and further tends strongly to show that he had the possession and control of the mortgage after its registration, individually, and not as the executor and representative of said estate. But it is unnecessary to further discuss this aspect of the case, for we are of opinion that this proceeding cannot be considered one for the administration and distribution of the property of the bankrupt, and is in no proper sense a bankruptcy proceeding, and that the district court was without jurisdiction in the cause.

The decree is reversed, and cause remanded, with directions to dismiss the bill, provided the parties, as is suggested by counsel, do not agree for an order to be passed by the District Court finally determining their rights as to the property in dispute.