**In the Matter of Theodore J. RICHMOND, Debtor.**

**No. 1110-67.**

United States District Court,
D. New Jersey.

Aug. 24, 1970.

Frederick B. Lacey, U. S. Atty., by John Barry, Asst. U. S. Atty., Paul Wallace (Ky.), Dept. of Justice, for the Government.

Reuben P. Goldstein, Jersey City, N. J., for Jean Richmond.

Cole, Berman & Belsky, by Bernard L. Belsky, Paterson, N. J., for receiver.

Crummy & O'Neill, by Michael R. Griffinger, Newark, N. J., for trustee.

## SUPPLEMENTAL OPINION

WORTENDYKE, District Judge:

After a reargument of this matter, on August 17, 1970, this Court amends and modifies its original Opinion, dated June 19, 1970, to hold that the Referee did not have jurisdiction to determine the tax liability of Jean Richmond. Such portions of the original opinion to the contrary of this ruling are rescinded.

This controversy arose as a result of a proof of claim in bankruptcy submitted by the United States for income taxes in the sum of $418,869.73 for the years 1965 and 1966 of which the Referee allowed $62,093.10.

The United States filed proof of claims for income taxes for the years in question in the bankruptcy action pertaining to the taxpayer, Theodore J. Richmond. The proof of claim was for $418,869.73. The bankrupt's wife, Jean Richmond, did not file a bankruptcy petition and was not adjudicated a bankrupt in this action. The Government also made jeopardy assessments against bank accounts held solely in the name of Jean Richmond for the same amount as the proof of claim in bankruptcy. Jean Richmond, the wife, did not challenge her assessment in the Tax Court. However, a motion was made by the bankrupt to expunge the tax claim of the United States, and upon the hearing on the matter, Mrs. Richmond petitioned the Referee to allow her to be made a party to the determination of the amount of tax due, on the grounds that she had filed a joint return with the bankrupt. That petition was granted over the objections of the United States. The Referee, in his opinion, determined the tax liability to be $62,093.10. The order itself did not purport to apply to Mrs. Richmond, and the United States chose not to appeal the ruling setting forth the bankrupt's tax liability. Subsequent to the original order issued herein, the Referee issued a supplementary order (dated December 31, 1969) declaring that the order setting up the tax liability of the bankrupt also applied to Jean Richmond, and ordered the United States to accept payment from her in full settlement of their joint tax liability. The order of December 31, also ordered the Internal Revenue Service to lift the jeopardy assessments on Mrs. Richmond's bank accounts, although no determination was ever made by the Court that these accounts were part of the bankrupt estate or were fraudulently conveyed out of the bankrupt estate. Moreover, a compromise was made whereby Mrs. Richmond paid over $35,000.00 and certain property to the trustee and the issue of ownership of Mrs. Richmond's personal funds was never reached. Referee's Certificate of Review, Page 3, Line 2. The Internal Revenue Service refused to accept the payment from Mrs. Richmond in settlement of the full tax liability on the joint re-

turn, and also refused to lift the jeopardy assessments as ordered by the Referee, on the grounds that the Referee lacked jurisdiction over the issue of Mrs. Richmond's tax liability, and also over Mrs. Richmond personally. It is this order of December 31, which the United States now seeks to set aside.

This Court must decide whether a referee in bankruptcy has jurisdiction to determine the validity of jeopardy assessments for federal taxes against a party not adjudged a bankrupt, simply because that party filed a joint tax return with the bankrupt.

Section 2(a) (6) of the Bankruptcy Act allows the Referee in bankruptcy to:

"Bring in and substitute additional persons or parties in proceedings under this title when necessary for the complete determination of a matter in controversy."

When the bankrupt's wife, who was herself not a bankrupt, was brought into the proceeding to determine her tax liability, the proceeding as to her was not a proceeding under the Bankruptcy Act, as the Referee had no jurisdiction to determine this type of controversy between third parties.

The United States concedes that third parties who are neither claimants nor petitioners can be brought in by the Referee in certain circumstances, those circumstances being where the additional parties are needed to help determine an orderly disposition of the bankruptcy estate. Matter of Burton Coal Co., 126 F.2d 447 (C.A. 7, 1942); In Re International Power Securities Corp., 170 F.2d 399 (C.A. 3, 1948). The facts of the case at bar, however, do not come within those circumstances. In fact, all that is involved here is a dispute between third parties, which in no way affects the equitable distribution of the bankruptcy estate.

The main test in considering whether or not to bring in any third party is whether the status of the trustee or any creditor in relation to the estate of the bankrupt is shown to be in any way directly affected by the controversy raised by the third party.

In Nixon v. Michaels, 38 F.2d 420 (C. A. 7, 1942), 423, the Court stated:

"It is true that persons not parties to the bankruptcy proceedings may usually intervene or be brought in, when necessary to protect their rights in or to a res in the bankruptcy court. * * *"

"But, leaving out of consideration preferential and fraudulent transfers, unless there is involved a res in the possession of the bankruptcy court, and in which res as a part of the bankrupt estate third parties claim rights, the bankrupcty court has no jurisdiction to allow such third parties to come into the bankruptcy court merely to litigate therein rights even against parties to the bankruptcy proceeding, and even though the property involved may once have been part of the bankrupt estate. * * *"

Also, the Court's language in describing the controversy in Brumby v. Jones, 141 F. 318 (C.A. 5, 1905), seems to be particularly descriptive of the proceedings involving the third party in the case at bar. At page 320, the Court stated:

"The controversy involved in this suit is not one relating to the collection and distribution of the bankrupt's estate. It is not a controversy with reference to property in the actual possession of the bankruptcy court, or where it had been taken from the possession of its trustee or receiver without its authority. It is not one arising in the bankruptcy proceedings in reference to property subject to distribution to the general creditors of the bankrupt, or one where, by the nature of the controversy, power is conferred on the court to determine conflicting liens, or the validity and priority of liens between secured creditors. * * *"

The Court held further at page 324, Brumby v. Jones, *supra*:

" * * * we are of opinion that this proceeding cannot be considered one for the administration and distribution of the property of the bankrupt, and is in no proper sense a bankruptcy proceeding, and that the district court was without jurisdiction in the cause."

This Court agrees that the case of Henrie v. Henderson, 145 F. 316, cert. den. 206 U.S. 563, 27 S.Ct. 795, 51 L.Ed. 1190, is controlling in the case at bar. This was an action brought by one J. B. Henderson, to compel the trustee to deed to him certain property of the bankruptcy estate already transferred by the trustee to Henrie, and to restrain the trustee from transferring certain other property to Henrie. The action was brought on the basis of an oral agreement between J. B. Henderson and Henrie that the property would be conveyed to Henderson. The bankrupt's name was H. C. Henderson in this case. Neither J. B. Henderson nor Henrie were parties to the bankruptcy action. The Court in that action found the action to be one for specific performance of a contract between the third parties and held further at page 320, Henrie v. Henderson, *supra*:

" * * * It is a controversy which does not in the slightest degree affect the creditors of J. B. Henderson (sic), the bankrupt, nor is the trustee in any wise affected. * * * There is no provision which gives the bankruptcy court jurisdiction to hear and determine controversies of this kind. The object of the bankruptcy law is to afford the means by which the creditors of the bankrupt may secure an equitable and fair distribution of the bankrupt's property, etc., and the act contemplates that any collateral questions growing out of the settlement of the bankrupt's estate may be heard and determined in that court. * * * * "

Based upon the above authority, the Referee could bring in a third party

if the controversy raised by the third party fits within any one of several qualifying conditions. First, is the third party being brought in to protect his rights in or to a res in the bankruptcy courts? Second, is the third party being brought in to determine whether or not there was a fraudulent conveyance from the bankrupt to such third party, or whether the third party took property from the estate without permission of the trustee? Third, does the controversy raised by the third party directly affect the status of the trustee or any creditor in relation to the bankrupt estate? Fourth, is the controversy raised by the third party such that a determination of that controversy is essential in reaching an equitable distribution of the bankrupt's estate?

The third party in the case at bar, the wife of the bankrupt, cannot answer "yes" to any of these qualifying questions. First, Mrs. Richmond definitely is not being brought in to protect her rights in or to any res in the bankruptcy court. There is no property at stake before the court to which Mrs. Richmond seeks a declaration of rights. Second, Mrs. Richmond was not a party in order to determine whether there had been a fraudulent transfer of property from the estate. In fact, a settlement had been previously reached between Mrs. Richmond and the trustee whereby no decision was reached regarding ownership of Mrs. Richmond's personally held property. When the hearing took place on the tax claim against the estate, there was not any question of ownership of any funds held by the third party, Mrs. Richmond. Third, the controversy sought to be raised by the third party does not directly affect the status of the trustee or any creditors in relation to the bankrupt estate. The trustee could be likened to a disinterested party in this case, for he stands to lose nothing or gain nothing. Likewise, the relationship of the creditor, the United States to the estate will not be affected because no new conflicting claims are settled or no property will be added or subtracted

from the estate. Fourth, a determination of the controversy sought to be raised by the third party is not essential to reaching an equitable distribution of the bankrupt estate. If the tax liability of the third party, Mrs. Richmond, is not determined by the Referee or the jeopardy assessments not lifted, there will be no effect on the distribution of the estate or on any claims against it. The question is in no way connected with the administration or distribution of the bankrupt estate. In Collier on Bankruptcy, paragraph 23.08, Note 7, (concerning jurisdiction over third parties by their consent) it is stated:

" * * * Thus consent cannot operate to confer jurisdiction on the bankruptcy court as to a claim asserted by strangers to the proceedings over a matter in no way connected with the administration or distribution of the bankrupt estate. * * * "

Therefore, the Referee in bankruptcy had no jurisdiction to determine the specific issue of the tax liability of Mrs. Jean Richmond, or any jeopardy assessments against her.

The doctrine of collateral estoppel is clearly set out by the Referee in his Opinion and Order of December 31, 1969. However, the doctrine of collateral estoppel is not determinative of the issues in the case at bar. The determinative factor is the premise set out above that the Referee could not determine the controversy on any theory, since he had no jurisdiction over Mrs. Richmond, the third party, as related to her taxes or personal property.

Although a successful raising of collateral estoppel in a subsequent action would prevent relitigation of collaterally decided issues, that fact alone does not entitle Mrs. Richmond, the third party, to raise that doctrine in a court which has no jurisdiction to hear it. Such a rule follows logically from the doctrine of limited jurisdiction. See: Nixon v. Michaels, *supra*. The proper forum in which to apply for relief based on collateral estoppel would be a court of general jurisdiction. This is true because in a court of limited jurisdiction, such as the bankruptcy court, if there is no jurisdiction over the person or property under the statute then no issue concerning that person or property can be decided by the Court.

The Referee in bankruptcy had no jurisdiction over the third-party, non-bankrupt, as to her taxes or personal property; therefore, Mrs. Richmond cannot assert any claim before the Referee as to her taxes, either on the theory of collateral estoppel or any other doctrine.

This Court, therefore, finds that the Referee in bankruptcy was without jurisdiction to rule as to the tax liability of Mrs. Jean Richmond, or any jeopardy assessments against her property not in the bankrupt estate. Therefore, since the Referee lacked jurisdiction to determine the tax liability of Jean Richmond, and thus lacked jurisdiction to order the Internal Revenue Service to accept funds, any orders made by the Referee purporting to apply to Mrs. Richmond or her personal property will be set aside.

Let an Order in conformity with this Opinion be submitted.